668 A.2d 980

**Susanne M. LEE, et al.**

v.

**MARYLAND NATIONAL CAPITAL PARK AND PLANNING COMMISSION, et al.**

**No. 311, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Dec. 28, 1995.

Reconsideration Denied Feb. 27, 1996.

Susanne M. Lee of Rockville, for Appellants.

Patricia M. Goldberg (Ronald D. Schiff, on the brief, Silver Spring, for appellee, MNCPPC).

Cynthia M. Bar, Lerch, Early & Brewer, Chtd., on the brief, Bethesda, for appellees, Powell.

Argued before DAVIS, HARRELL and SALMON, JJ.

SALMON, Judge.

The Montgomery County Planning Board of the Maryland–National Capital Park and Planning Commission (the Board), appellee, approved the resubdivision of two lots in the Glen

Hills area into six lots. Appellants [1] appeal from a judgment of the Circuit Court for Montgomery County that affirmed the Board's approval. In this appeal, we consider the meaning of terms in the Montgomery County subdivision ordinance and how similar proposed resubdivision lots must be to existing lots in the neighborhood, block, or subdivision before the Board may approve a plan.

Appellants present the following questions, which we have rephrased for clarity: [2]

I. Did the Board err when it interpreted Montgomery County Code § 50–29(b)(2) to permit mere consideration of, not compliance with, each of the ordinance's provisions?

II. Does the record contain substantial evidence to support the Board's approval of the resubdivision?

### FACTS

In July 1990, Marshall and Barbara Powell submitted an application to the Board for preliminary approval for the resubdivision of a 6.85–acre tract of land located at the confluence of Circle Drive, Ridge Drive, and Watts Branch Drive in the Glen Hills area of Montgomery County. This application sought a resubdivision of the property from two lots to seven lots, each with an area of 40,000 square feet. At least five of the seven lots would be accessed by a new cul-de-

---

**1.** Appellants are Susanne M. Lee, Harold E. Collins, Garner W. Duvall, Jr., Mary H. Duvall, Benjamin P. Elliott, William E. Heflin, Sr., Janet S. Olding, Robert P. Olding, Paula Oser, Warren Oser, and Michael S. Renner, all of whom own property in the Glen Hills area of Rockville, Maryland.

**2.** Appellants also ask: Did the Board violate appellants' due process rights by failing to identify the neighborhood prior to the hearing? Appellants argue that the failure of the Board to identify the neighborhood lots until the date of the hearing caused appellants to lose the opportunity to properly prepare their case before the Board. This allegedly had a direct, adverse impact on appellants' participation in the Board's decision-making process and denied appellants due process. We need not reach the merits of this issue because we answer question one in the affirmative and question two in the negative.

sac, which was included in the resubdivision plan. The Board determined that the application did not meet the resubdivision requirements because the resulting "panhandle" lots "wouldn't be in keeping with the character of the neighborhood" and because the size of the lots was not of the same character as the much larger lots in the neighborhood.

The Powells submitted a revised plan in May 1993 that proposed six lots.[3] One lot was to be accessed via Watts Branch Drive; the remaining five were to be accessed via a cul-de-sac off Watts Branch Drive. The proposed lots varied in size and shape.

The Board conducted a public hearing on the revised application on July 1, 1993. The Board designated a neighborhood consisting of fourteen lots surrounding the proposed resubdivided lots as required by Montgomery County Code § 50–29(b)(2) (1994) (mandating that the Board compare proposed resubdivisions with "other lots within the existing block, neighborhood or subdivision").[4] There are no cul-de-sacs in the designated neighborhood. All fourteen lots have street frontage on existing streets. All lots in the designated neighborhood are in alignment with each other and existing streets; that is, the lots are set parallel to each other along neighborhood streets, with driveway access to existing streets. All lots are basically rectangular, except one triangular lot. Although appellants requested prior to the July 1, 1993 hearing date information on which lots comprised the neighborhood to be considered, the Board did not release that information until the hearing.

Appellants attended the hearing and presented an alternative resubdivision plan, which divided the two lots into four rectangular lots. Appellants asserted that this proposal would

---

3. A copy of the plan of this proposed resubdivision has been appended to this opinion as exhibit 1.

4. · A copy of the map of the neighborhood as designated by the Board is appended to this opinion as exhibit 2.

meet the resubdivision criteria because the lots would be of the same character as the four existing lots directly across Watts Branch Drive.

The Board voted 3–to–2 to approve the resubdivision plan submitted by the Powells. It issued its decision on December 14, 1993, stating, in pertinent part:

In reviewing a proposal to resubdivide property, the Planning Board must determine, based upon the evidence in the record, whether the plan comports with all of the relevant sections of the Subdivision Regulations, including § 50–29(b)(2)....

. . . . .

The property is located in the RE–1 zone, which imposes minimum 40,000–square–foot lot sizes.... Staff explained that an earlier submitted alternative development would have involved panhandle/pipestem lots, not in keeping with the present character of the neighborhood. *The current plan, however creates large, traditionally shaped lots, in keeping with the existing neighborhood.*

. . . . .

The Board reviews applications for resubdivision with great scrutiny, recognizing that resubdivision in an established neighborhood is subject to the heightened regulatory review set forth in the Montgomery County Code.

(Emphasis added.)

The Board concluded that the proposed resubdivision would maintain the rural character of the neighborhood:

The lots proposed in this plan will front on a newly constructed street with a cul-de-sac and also on Watts Branch Drive. *The lots along Watts Branch Drive will be of the same shape, area, frontage and size as those recorded lots immediately across Watts Branch,* thus assuring consistency with the existing neighborhood. *The*

*lots served by the cul-de-sac will also be of the same size, shape, and area as those within the defined neighborhood* adopted by the Board.

(Emphasis added.)

Appellants filed a Petition for Judicial Review in the Circuit Court for Montgomery County seeking reversal of that decision. Appellees Marshall and Barbara Powell, owners of the two lots, filed a response to the petition pursuant to Maryland Rule 7–204, indicating their intent to participate. The circuit court affirmed the Board's decision on December 29, 1994.

### STANDARD OF REVIEW

A court reviewing the decision of an administrative agency is "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226 (1994). The standard of review thus depends upon the nature of the agency finding being reviewed. *Gray v. Anne Arundel County,* 73 Md.App. 301, 308, 533 A.2d 1325 (1987). First, the reviewing court must determine whether the agency interpreted and applied the correct principles of law governing the case and no deference is given to a decision based solely on an error of law; the court may substitute its own judgment. *See, e.g., State Admin. Bd. of Election Laws v. Billhimer,* 314 Md. 46, 59, 548 A.2d 819 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989). "In regards to findings of fact, the [reviewing] court cannot substitute its own judgment for that of the agency and must accept the agency's conclusions if they are based on substantial evidence and if reasoning minds could reach the same conclusion based on the record." *Columbia Road Citizens' Ass'n v. Montgomery County,* 98 Md. App. 695, 698, 635 A.2d 30 (1994).

*DISCUSSION*

**I.**

The first issue we must decide is whether the Board properly interpreted and applied the section of the Montgomery County Code that governs the design of resubdivided lots. The ordinance states that

> [l]ots on a plat for the resubdivision of any lot, tract or other parcel of land that is a part of an existing subdivision previously recorded in a plat book *shall be of the same character as to street frontage, alignment, size, shape, width, area and suitability for residential use* as other lots within the existing block, neighborhood or subdivision.

MONTGOMERY COUNTY CODE § 50–29(b)(2) (1994) (emphasis added).[5]

Appellees contend that, if the Board must find that a proposed resubdivision meets all seven criteria, it may only approve lots that are *identical* to existing lots. Appellees argue, correctly, that this would be impossible. Appellants, however, have never contended that the resubdivision ordinance mandates identical lots.

Prior to 1965, the Montgomery County Code stated that resubdivided lots "shall be of *substantially the same* character as to suitability for residential use, area, street frontage and alignment . . . as other land within the existing subdivision." *See* MONTGOMERY COUNTY CODE § 101–9 (1960) (emphasis added); *see also* MONTGOMERY COUNTY CODE § 106–8 (1955). By 1965 the county council had changed the ordinance to its present wording, mandating lots "of the *same* character." MONTGOMERY COUNTY CODE § 104–18 (1965) (emphasis added). The county council, when it removed the word "substantially," indicated an intent to raise the standard an owner must meet in order to resubdivide lots.

------

**5.** The lots must be aligned "to existing lots and streets." MONTGOMERY COUNTY CODE § 50–2(i) (1994).

 The term "character" is not defined in the Montgomery County Code, nor has the word been interpreted by Maryland courts as it relates to the Montgomery County Code.[6] "When interpreting a statute, we assume that the words used have their ordinary and natural meaning." *Rettig v. State,* 334 Md. 419, 423, 639 A.2d 670 (1994). We must give meaning to all parts of a statute. *See Sinai Hosp. of Baltimore, Inc. v. Department of Employment & Training,* 309 Md. 28, 39–40, 522 A.2d 382 (1987). "Character" means "the *aggregate of features and traits that form the apparent individual nature* of some person or thing." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 247 (1989) (emphasis added). The character of the neighborhood, therefore, is the aggregate of features and traits that give it its distinctive look and feel. A neighborhood's character is a function of the seven criteria specified in section 50–29(b)(2).

Appellees argue that the criteria established in section 50–29(b)(2) provide mere "guidance" to the Board and assert that the Board must only determine "whether the application of

---

6. The word "character" has been discussed but not defined in rezoning cases in which the issue is whether there has been a substantial change in the character of the neighborhood. *See, e.g., Randolph Hills, Inc. v. Whitley,* 249 Md. 78, 83, 238 A.2d 257 (1968). In *Randolph Hills, supra,* Judge Barnes, concurring in part and dissenting in part, stated, "[W]e have frequently indicated in a particular case that certain 'changes' did not occur within the neighborhood or did not result in a change in the 'character' of the neighborhood. But, alas, we have not established the criteria of what does change 'the character' of a 'neighborhood.'" *Id.* at 91, 238 A.2d 257. The Court of Appeals has used a case-by-case analysis in this area, holding that certain fact-specific changes in the area surrounding the proposed rezoning do not amount to a change in the character of the neighborhood. *See, e.g., Hooper v. Mayor of Gaithersburg,* 270 Md. 628, 638, 313 A.2d 491 (1974) (increase in number of people in community and additional traffic does not effect a change in character); *Germenko v. County Bd. of Appeals of Baltimore County,* 257 Md. 706, 711, 264 A.2d 825 (1970) (fact that rezoning may result in a more profitable use of the land or that hardship may follow retention of existing classification are insufficient justifications for rezoning); *Helfrich v. Mongelli,* 248 Md. 498, 503–504, 237 A.2d 454 (1968) (widening of street and development of colleges in the area did not change character of neighborhood).

*some or all* the criteria to proposed lots truly results in conforming lots." (Emphasis added.) Appellants argue that the clear language of the ordinance requires resubdivision plans to comply with *each* of the seven criteria. We agree with appellants.

The zoning ordinance of Montgomery County defines the word "shall" as "mandatory and not optional." MONTGOMERY COUNTY CODE § 59–A–2.2(a) (1984). Appellees argue that this section is "wholly contained in Chapter 59 and [is] specifically limited to that chapter alone." [7] Appellees ignore section 50–1, which states that all terms used in chapter 50 that "are defined in chapter 59 ... shall have the same meaning as the definition therein." MONTGOMERY COUNTY CODE § 50–1 (1994). Therefore, we hold that the word "shall" in Montgomery County Code § 50–29(b)(2) is mandatory, and that the Board is obliged to determine whether the resubdivision plan proposes lots that have the same character as existing lots in regard to all seven criteria. The Board must not just *consider* all seven criteria listed in section 50–29(b)(2) but must find that a proposed resubdivision *complies* with all seven criteria. Compliance with the criteria ensures that the lots will be of the same character as existing lots in the neighborhood, block, or subdivision. To prove that the seven criteria have been met, lots need not be cookie cutter matches to existing lots in the neighborhood. The correlation, however, between area, size, shape, street frontage, alignment, width, and suitability for residential use of the proposed resubdivided lots and existing lots must be high in order to meet the requirements of section 50–29.

## II.

We turn now to the Board's findings of fact to determine whether there is evidence in the record to support each fact found, *see Commissioner, Baltimore City Police Dep't v.*

---

7. Appellants argue this presumably because the ordinance states "[i]n *this chapter* ... ['shall' is] mandatory." MONTGOMERY COUNTY CODE § 59–A–2.2(a) (1984) (emphasis added).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Cason,* 34 Md.App. 487, 508, 368 A.2d 1067 (1977), and to determine whether the Board applied the correct principle of law to those facts.

### The Neighborhood

▮▮▮▮▮ The area or size of only eight of the fourteen existing lots in the defined neighborhood were placed on the record. The smallest of these is 42,000 square feet;[8] the largest is 120,000 square feet. The other lots about which the record contains information regarding area are 47,300 square feet, 48,000 square feet, 54,400 square feet, 74,900 square feet, 89,200 square feet, and 93,000 square feet. The average size of these lots is 75,257 square feet. Thirteen of the fourteen lots are rectangular. The exception is a large, triangular lot on the corner of Watts Branch Drive and Circle Drive. There is no information in the record as to the width of any of the existing lots in the designated neighborhood. All existing lots in the designated neighborhood have frontage on existing streets, although the length of frontage was given for only Lot 6 in Block 10. That lot has 254 feet of street frontage on Ridge Road. The record also indicates that all existing lots in the designated neighborhood are aligned with existing streets. All of these lots are suitable for residential use.

### The Proposed Resubdivision

The suitability of all six of the proposed lots for residential use is conceded by both sides. There is no information in the

---

**8.** The record does not indicate which lot is this size. The trial judge, however, took "judicial notice" of the land records of the Circuit Court for Montgomery County and determined that Lot 3 in Block 10 was 42,983 square feet. In doing so, he made an independent finding of fact that is impermissible. *See Baines v. Board of Liquor License Comm'rs for Baltimore City,* 100 Md.App. 136, 142–43, 640 A.2d 232 (1994) (reviewing court restricted to record made before the administrative agency). The trial judge also looked at the size and alignment of lots outside the designated neighborhood in upholding the Board's approval. This also was impermissible. *See United Steelworkers of Am. Local 2610 v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62 (1984) ("[I]n judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.").

record as to the width of any of the proposed resubdivided lots.

*Lot 1:* Lot 1 is 42,000 square feet,[9] rectangular, and with street frontage on Watts Branch Drive and Ridge Drive. The lot is in alignment with Watts Branch Drive.

*Lot 2:* Lot 2 is 41,000 square feet,[10] irregularly shaped, with street frontage on Watts Branch Drive. The lot is not in alignment with Watts Branch as it accesses onto the proposed cul-de-sac at an angle.

*Lot 3:* Lot 3 is 52,000 square feet, pie-shaped, with no frontage on existing streets. The lot is not in alignment with Watts Branch as it accesses onto the proposed cul-de-sac at an angle.

*Lot 4:* Lot 4 is 54,400 square feet, pie-shaped, with no frontage on existing streets. The lot is aligned with Watts Branch Drive but set off at the end of the proposed cul-de-sac.

*Lot 5:* Lot 5 is 50,000 square feet,[11] pie-shaped, with no frontage on existing streets. The lot is not aligned with Watts Branch Drive as it accesses onto the cul-de-sac at an angle.

*Lot 6:* Lot 6 is 41,200 square feet, irregularly shaped with street frontage on Watts Branch. This lot is in alignment with Watts Branch Drive due to its frontage on that street, although access is gained from the cul-de-sac.

The Board did not find that the character of the lots conformed to all seven criteria, and thus it did not apply the correct legal standard. The Board found that lots 1, 2, and 6, those with street frontage on Watts Branch Drive, conformed

---

**9.** There is a discrepancy in the record as to the size of several of the proposed lots. We will use the area as stated in the Board's opinion approving the plan. The plan submitted by the Powells, however, gives the area of this lot as 42,300 square feet.

**10.** The plan submitted by the Powells gives the area of this lot as 41,200 square feet.

**11.** The plan submitted by the Powells gives the area of this lot as 50,400 square feet.

as to "shape, area, frontage and size," but did not mention width or alignment. The Board found that lots 3, 4, and 5, those with street frontage only on the proposed cul-de-sac, conformed as to "size, shape, and area," but did not mention frontage, width or alignment.

Many of the Board's conclusions were not based on substantial evidence. Although the Board found that all six lots were of the same character as to shape, only proposed lot 1 is shaped like the lots in the designated neighborhood. Lots 2 and 6 are irregularly shaped; lots 3, 4, and 5 are pie-shaped. While the Board found that all six lots were of the same character as to size and area as the lots in the designated neighborhood, at least two of the lots are smaller than any other lot in the neighborhood.[12] All six of the proposed lots are smaller than 75,257 square feet, the average size [13] of the lots in the neighborhood.

The Board found that the proposed resubdivision "creates large, traditionally shaped lots, in keeping with the existing neighborhood." The evidence simply does not support that finding. Besides being much smaller than the average lots in the designated neighborhood, three of the proposed lots (1, 2, and 6) are only slightly larger than the 40,000 square foot lots in the owners' original July 1990 application for resubdivision, which the Board denied because the lots were not in "keeping with the character of the neighborhood." Similarly, when compared to lots in the designated neighborhood, the size and shape of many of the proposed six lots in the approved resubdivision were not of the same character as the lots in the existing neighborhood.

---

12. Lot 2 is 41,000 square feet, and lot 6 is 41,200 square feet. The smallest lot in the neighborhood is 42,000 feet; the trial judge found that it was actually 42,983 square feet. *See, supra,* note 8. If the smallest lot in the neighborhood actually is 42,983 square feet, lot 1, at 42,000 square feet, is also smaller than any existing lot in the neighborhood. Thus, half of the proposed lots would be smaller than *any* existing lot in the neighborhood.

13. Based on the size given in the record of eight of the fourteen neighborhood lots.

The Board also found that lots 1, 2, and 6 had the same character as to street frontage as existing lots in the neighborhood. While it is true that these three lots are bounded in part by Watts Branch Drive, the length of this frontage or of the street frontage of existing lots is not in the record and it was therefore impossible for the Board to determine if the street frontage was of the same character. Lots 3, 4, and 5 had no street frontage on existing streets; therefore those lots clearly do not meet the street frontage criteria. The Board made no findings at all as to the alignment or the width of the proposed lots; nor is there any information as to the width of any existing lot.

Reasoning minds could not have reached the same conclusion arrived at by the Board as to the proposed resubdivision's compliance with section 50–29(b)(2). Because there is no substantial evidence in the record supporting the Board's decision to approve the resubdivision and because the Board applied the wrong legal standard, we substitute our own judgment, *see, Billhimer, supra,* 314 Md. at 59, 548 A.2d 819, and reverse the decision of the circuit court.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS TO REVERSE THE MONTGOMERY COUNTY PLANNING BOARD OF THE MARYLAND–NATIONAL CAPITAL PARK AND PLANNING COMMISSION'S APPROVAL OF THE RESUBDIVISION PLAN; COSTS TO BE PAID BY APPELLEES.**