863 A.2d 358

Adrian COHEN

v.

**MARYLAND STATE BOARD OF PHYSICIAN QUALITY ASSURANCE.**

No. 1218, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Dec. 10, 2004.

Paul F. Newhouse, Towson, for appellant.

Sarah E. Pendley (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., EYLER, DEBORAH S., BLOOM, THEODORE S., (Retired, specially assigned), JJ.

MURPHY, C.J.

In this appeal from the Circuit Court for Montgomery County, Adrian Cohen, M.D., appellant, argues that the Maryland State Board of Physician Quality Assurance ("the Board"), appellee, should not have revoked his license to practice medicine.[1] We are persuaded, however, that the decision of the Board must be affirmed.

## Background

Appellant, a psychiatrist, was licensed to practice medicine in 1969. On June 22, 1994, he and the Board entered into a Consent Order to resolve disciplinary charges related to the quality of his psychiatric care. The Consent Order provided that (1) appellant's license to practice medicine was suspended for three months; (2) the suspension was stayed; and (3) appellant was placed on probation for three years.[2] The

---

1. Appellant presents the following questions for our review:

    **I. DID THE MARYLAND BOARD OF PHYSICIAN QUALITY AS-SURANCE EXCEED ITS AUTHORITY WHEN IT REVOKED CO-HEN'S LICENSE TO PRACTICE MEDICINE?**

    **II. MAY THE BOARD IMPOSE ADDITIONAL CONDITIONS OF PROBATION UPON A PHYSICIAN WHO HAS ALREADY COM-PLETED THE TERM OF SUSPENSION OF HIS MEDICAL LI-CENSE?**

    **III. WAS THE PENALTY OF REVOCATION UNREASONABLY SE-VERE AND ARBITRARY IN LIGHT OF THE TECHNICAL DEFI-CIENCIES OF COHEN'S COMPLIANCE WITH THE TERMS OF HIS PROBATION?**

2. The terms and conditions of appellant's probation required that he (1) hire a supervisor to review his practice; (2) complete certain continuing medical education course requirements; (3) attend professional meetings; (4) submit written documentation that he has fulfilled the first two requirements; (5) maintain legible records; (6) limit his practice to no more than two locations and a home office; (7) participate in peer review; and (8) "practice competently."

Consent Order expressly provided "that if [appellant] violates any of the terms of his probation as set forth in this Consent Order, or any of the terms or conditions of this Consent Order, then the Board, after determination of violation and notice and a hearing, shall lift the stay of suspension and reinstate the three (3) month suspension and/or impose any other disciplinary sanctions it deems appropriate, said violation of probation being proved by a preponderance of evidence. . . ."

In 1995, the Board issued new charges against appellant. These charges alleged that, in the early 1990s, appellant had committed "boundary violations" with a female patient. The Board concluded that appellant "is guilty of immoral and unprofessional conduct in the practice of medicine." As a result, on January 22, 1997, appellant and the Board entered into a second Consent Order in which appellant agreed that his license would be suspended for a year, effective February 28, 1997. The Consent Order provided that, at the conclusion of the one year suspension, appellant could petition the Board for a stay of the suspension and for reinstatement of his license. During the period of his suspension, appellant was required to (1) surrender his license, (2) have a psychiatric evaluation, (3) participate in psychotherapy, and (4) enroll in a medical ethics course.

The Consent Order also provided that (1) in the event the Board reinstated appellant's medical license, he would be placed on probation for five years, subject to certain conditions,[3] and (2) if appellant were to violate any of the conditions, the Board, after notice and a hearing, could lift the stay of suspension and "impose any other disciplinary sanctions it deems appropriate, [provided that the] violation [was] proved by a preponderance of evidence."

---

3. The conditions included the obligations to (1) continue therapy, if ordered by his evaluating therapist, (2) submit to supervision of his practice by another mental health professional, (3) submit to peer review, and (4) "practice in accordance with the Act."

On January 12, 1998, appellant petitioned the Board for a stay. In an "Order Staying Suspension, Order of Probation," that took effect on March 1, 1998, the Board granted that petition subject to certain conditions, the most significant of which was the requirement that a chaperone be present when appellant was treating patients. The Order also stated "that all other terms and conditions ... set forth in prior Orders remain in full force and effect," and "that if the [appellant] violates the terms of this Order, the Board, after notice and a hearing and a determination of violation, may lift the stay of suspension and may impose any other disciplinary sanctions that it deems appropriate, said violation of probation being proved by a preponderance of the evidence...."

Almost immediately, appellant failed to (1) keep his practice adequately supervised and (2) verify that he was meeting the chaperone requirement. The Board sent letters to appellant, requesting that he comply with the terms of his probation, but he failed or refused to do so.

In May of 2001, the Board filed a formal complaint against appellant, asserting that he violated the conditions of his probation. On December 12, 2002, the Board revoked appellant's license. Appellant sought judicial review in the circuit court, which affirmed the decision of the Board. This appeal followed.[4]

## Standard of Review

Judicial review of an administrative agency's decision does not involve a *de novo* evaluation on the evidence. *Catonsville Nursing Home, Inc. v. Loveman*, 349 Md. 560, 569, 709 A.2d 749 (1998); *Anderson v. Dep't of Pub. Safety & Corr. Servs.*, 330 Md. 187, 212, 623 A.2d 198 (1993). A reviewing court must determine whether there is substantial evidence to support the final decision of the agency. *Blaker v. State Bd. of Chiropractic Examiners*, 123 Md.App. 243, 254,

---

4. In reviewing a circuit court's decision, we essentially repeat the task performed by the circuit court. *Red Roof Inns v. People's Counsel for Baltimore County*, 96 Md.App. 219, 224, 624 A.2d 1281 (1993).

717 A.2d 964 (1998). The reviewing court, however, may not make its own factual findings. *Id.* at 255, 717 A.2d 964. "An administrative agency's decision 'carries with it a presumption of validity; consequently, judicial review is limited to determining whether a reasoning mind could have reached the factual conclusion reached by the agency.'" *Id.* (quoting *Liberty Nursing v. Dep't of Health & Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941 (1993)).

■ On the other hand, an agency's conclusions of law are not given deference by the reviewing court, which *may* substitute its judgment for that of the agency. *Id; see also Lee v. Maryland National Capital Park and Planning Comm'n,* 107 Md.App. 486, 492, 668 A.2d 980 (1995).

### Discussion

■ Appellant argues that the Board exceeded its statutory authority when it revoked his license because the ground for revocation, i.e. violation of probation, is not found in Maryland Health Occ. § 14–404. There is no merit in this argument.

The State Board of Physician Quality Assurance is established and defined in MD.CODE, HEALTH OCCUPATIONS (H.O.) §§ 14–201 through 14–208 (2003). Subject to certain hearing requirements contained in § 14–405, the Board, by a majority vote, may discipline a licensee. H.O. § 14–404. There are forty grounds upon which the Board may base such discipline. H.O. § 14–404(a).

Appellant argues that the revocation of his license was improper because the conduct that led to revocation was his failure to adhere to conditions of probation set forth in his Consent Order. According to appellant, failing to follow the requirements of a consent order is not one of the statutory grounds listed upon which the Board may base a license revocation.

The Board may "reprimand any licensee, place any licensee on probation, or suspend or revoke a license" if a licensee is "guilty of immoral or unprofessional conduct in the practice of medicine[.]" H.O. § 14–404(a)(3). The Board may also re-

voke the license of a licensee who is found to be professionally, physically, or mentally incompetent. H.O. § 14-404(a)(4).

In 1995, the Board issued charges alleging that, in the early 1990s, appellant had committed "boundary violations" with a female patient. The Board concluded that appellant was "guilty of immoral and unprofessional conduct in the practice of medicine." *See* H.O. § 14-404(a)(3). At that time, the Board, by majority vote, could have revoked appellant's license. On January 22, 1997, however, appellant and the Board entered into a second Consent Order. In that second Consent Order, appellant expressly agreed that (1) in the event that his license was reinstated, he would be placed on probation for a period of five years subject to certain conditions, and (2) if he were to violate any of the terms of his probation, the Board, after notice and a hearing, could lift the stay of suspension and "impose any other disciplinary sanctions it deems appropriate, . . . ."

After disciplinary charges are brought against a physician, the Board is required to offer the accused a meeting "which is a voluntary, informal, and confidential proceeding to explore the possibility of a consent order or other resolution of the matter." MD. REGS.CODE 10.32.02.03(C)(7). "If there is no basis for an agreement between the respondent and the administrative prosecutor, the matter proceeds to a hearing." The hearing is an evidentiary one conducted by an administrative law judge, who issues to the board written proposed findings of fact, proposed conclusions of law, and a proposed disposition. We are persuaded that, when appellant entered into the Consent Order, he voluntarily agreed to the terms set forth therein, including the provision that if he failed to meet the terms of the Consent Order, the Board would be able to impose any appropriate disciplinary sanction.[5]

---

5. "If [ ] the subject signs and returns the agreement and then engages in the activity therein proscribed, the Board would then have grounds for additional disciplinary actions for that subject's violation of unprofessional conduct in failing to abide by the required 'consent' order." *Cf. Fioretti v. Maryland State Bd. of Dental Examiners,* 351 Md. 66, 84 n. 12, 716 A.2d 258 (1998).

. ■ Appellant also argues that the Board is without authority to impose additional conditions of probation upon a physician who has already completed his term of suspension. Appellant, however, expressly agreed that the reinstatement of his license would be conditioned on compliance with certain conditions for a period of five years. Under these circumstances, the Board was not precluded from imposing additional terms in the "Order Staying Suspension" and did not exceed its statutory authority in imposing the chaperone requirement. Appellant chose not to challenge the additional conditions until his license was revoked. That challenge came much too late.

■ Finally, appellant argues that the penalty of revocation was unreasonably severe and arbitrary. We must, however, give administrative agencies substantial deference in reviewing their decisions. *Blaker, supra,* 123 Md.App. at 254, 717 A.2d 964.

The record shows that the Board was entitled to find that appellant (1) engaged in inappropriate behavior with clients; (2) managed files inappropriately; and (3) failed to meet the terms of his Consent Orders. A reasoning mind could have reasonably found that appellant failed to comply with the terms of his probation. Having made that finding, the Board was entitled to conclude that appellant's license should be revoked.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**