66 A.3d 50

Phyllis K. BARSON

v.

MARYLAND BOARD OF PHYSICIANS.

No. 2673, Sept. Term, 2011.

Court of Special Appeals of Maryland.

May 3, 2013.

Kevin A. Dunne (Ian I. Friedman, Ober, Kaler, Grimes & Shriver, on the brief), Baltimore, MD, for appellant.

David E. Wagner (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: MATRICCIANI, NAZARIAN, JAMES R. EYLER (Retired, Specially Assigned), JJ.[*]

NAZARIAN, J.

A deal is always a deal, but this appeal brings to mind the long-standing playground rule of "no backsies." By calling "no backsies" *before* finalizing an agreement, the parties reiterate and reinforce their intention to be bound and stay bound.[1] In this case, the Maryland Board of Physicians (the "Board"), the appellee, charged appellant Phyllis K. Barson, an experienced physician, with improperly prescribing opiates and other controlled substances for a dozen patients over more than eight years. Dr. Barson settled these charges by entering into a Consent Order with the Board in which, among other things, she waived her rights to contest or appeal the Consent Order and represented that she understood its mean-

---

[*] Watts, Shirley M., J., did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8–605.1.

1. *See, e.g.,* Russell Hoban, *A Bargain for Frances* (1970). The Consent Order in this case is, as the discussion below reveals, distinguishable from the bargain in the story, which Frances entered in reliance on her friend Thelma's misrepresentations about the value and virtues and availability of plastic versus china tea sets. Even still, and putting aside whether Frances might have been able to seek rescission from a higher authority, the "no backsies" rule held until Thelma's seller's remorse (fueled in part by a clever if borderline omission on Frances's part) led *her* to seek, and Frances to agree to, backsies after all. Another variant applies in the game of tag: if a player who is "it" calls "no backsies" before tagging another, the taggee cannot tag him/her back immediately.

ing and effect. Later on, Dr. Barson claimed not to have foreseen all of the professional consequences of the Consent Order, and, after experiencing those consequences, she asked the Board to revise it. The Board declined, and the Circuit Court for Baltimore City dismissed Dr. Barson's petition for judicial review and a writ of mandamus.

We affirm. Under the circumstances, Dr. Barson had no right to compel the Board to revise the Consent Order and the Board did not err in declining her request. Put another way, Dr. Barson agreed to settle the Board's charges on a "no backsies" basis, and the Board was entitled to hold her to that agreement.

## BACKGROUND

Dr. Barson has been a practicing physician in Maryland since 1973. She has practiced in two distinct areas: pain management and anesthesiology. At the time she entered into the Consent Order, she was the Chair of the Department of Anesthesiology at Dimension Hospital's Surgicenter in Bowie, Maryland.

In 2009, the Board received a report that Dr. Barson had been sending prescriptions for painkillers to patients through the mail and without conducting appropriate examinations. After initiating an investigation and conducting a peer review of Dr. Barson's records, the Board determined that Dr. Barson had failed to meet the appropriate standard of care and to keep adequate medical records for twelve individual patients. We will not recount the whole story here—the details are set forth in full in the Consent Order's Findings of Fact, which adopted the allegations without revision—but it will suffice to say that the Board charged Dr. Barson with prescribing potent painkillers (including Oxycontin, Percocet, and other opioid medications) from her home, without justification, without monitoring the patients, and without examining or seeing the patients either prior to or over the course of prescribing the drugs. The allegations spanned a period of more than eight years and, if proven, would have supported multiple

statutory violations that exposed Dr. Barson to serious potential sanctions, including revocation of her license and significant fines. *See* Md.Code (1981, 2009 Repl.Vol., 2012 Cum. Supp.) §§ 14–404(a)(22), (a)(40), –405.1 of the Health Occupations Article ("Health Occ.").

On January 13, 2011, the Board issued an Order summarily suspending Dr. Barson's license to practice medicine. The Board convened a show cause hearing on January 26, 2011, and declined to reinstate her. After a Case Resolution Conference on April 6, 2011, and *before* the case proceeded to an evidentiary hearing, Dr. Barson and the Board agreed to settle the charges by entering into the Consent Order. Among its terms, the Consent Order set forth *verbatim*, as "General Investigative Findings," the allegations contained in the summary suspension order and stated, as "Conclusions of Law," the finding that Dr. Barson had violated the Maryland Medical Practice Act, Health Occ. § 14–404:

> Based on the foregoing Findings of Fact, the Board concludes as a matter of law that [Dr. Barson] violated the following provisions of the Act: Fails to meet appropriate standards as determined by appropriate peer review for the delivery of quality medical and surgical care performed in an outpatient surgical facility, office, hospital, or any other location in this State, in violation of . . . [Health Occ.] § 14–404(a)(22); and Fails to keep adequate medical records as determined by appropriate peer review, in violation of [Health Occ.] § 14–404(a)(40).[2]

The "Order" section of the Consent Order suspended Dr. Barson's license immediately for ninety days and placed her on probation for at least two years, subject to specified conditions. Two of these conditions lie at the heart of this case:

---

2. The Consent Order indicates that the Board dismissed charges under Health Occ. § 14–404(a)(27), which permits the Board to reprimand, place on probation, or suspend or revoke the license of any licensee who "[s]ells, prescribes, gives away, or administers drugs for illegal or illegitimate medical purposes."

1. [Dr. Barson] shall not practice algology or pain management, and shall not treat any patients for chronic pain management;

2. *[Dr. Barson] shall forfeit her Federal DEA registration number and Maryland CDS registration number, and shall not re-apply for the same.* However, nothing in this Consent Order shall be construed to prevent [Dr. Barson] from prescribing non-controlled and/or non-scheduled prescription medications[.]

(Emphasis added.) But probation is not permanent. At the end of two years, the Consent Order permitted Dr. Barson to petition the Board and contemplated that if she complied with all conditions, the Board will terminate her probation and allow her to practice medicine unencumbered.

In the last section of the Consent Order, which bears the heading "CONSENT," Dr. Barson agreed to be bound by the terms of the Order, waived any right to contest them, waived any right to appeal and, perhaps most importantly, acknowledged that she understood the Consent Order's meaning and effect (we have reproduced this section in its entirety, with emphases added):

### *CONSENT*

I, Phyllis Barson, M.D., acknowledge that I have had the opportunity to consult with counsel before signing this document. *By this Consent, and for the sole purpose of resolving the issues raised by the Board, I accept to be bound by this Consent Order and its conditions and restrictions. I waive any rights I may have had to contest the Findings of Fact and Conclusions of Law.*

I acknowledge the validity of this Consent Order, as if entered into after the conclusion of a formal evidentiary hearing in which I would have had the right to counsel, to confront witnesses, to give testimony, to call witnesses on my own behalf, and to all other substantive and procedural protections as provided by law. I acknowledge the legal authority and the jurisdiction of the Board to initiate these

proceedings and to issue and enforce this Consent Order. *I also affirm that I am waiving my right to appeal any adverse ruling of the Board that might have followed any such hearing.*

I sign this Consent Order after having had an opportunity to consult with counsel, without reservation, and I fully understand and comprehend the language, meaning and terms of this Consent Order. *I voluntarily sign this Order, and understand its meaning and effect.*

The Consent page is signed by Dr. Barson and her attorney, who "[r]ead and approved" it, and also notarized.[3]

On July 12, 2011, counsel for Dr. Barson sent a letter to the Executive Director of the Board and asked "that her consent order be revised or interpreted to allow her the right to have DEA or CDS registrations for the sole purpose of writing orders for anesthesia drugs for Hospital patients." According to the letter, Dr. Barson did not realize at the time she entered into the Consent Order that forfeiting her federal DEA and Maryland CDS registration numbers ("the registration numbers") would preclude her from returning to her anesthesiology practice at Dimension Hospital because "the Hospital could not fill her 'orders' for anesthesia drugs unless she had a DEA registration number" and because "Hospital by-laws expressly require her to have a DEA registration number to maintain staff privileges." The letter contended that "[b]oth the Board and Dr. Barson expected she would, upon returning to practice, resume her work as an anesthesiologist," and that "[i]f there was an intent that she not return to her practice, a request for revocation or surrender would have been made."

The Board forwarded Dr. Barson's letter to the Administrative Prosecutor, who responded in a July 27, 2011 letter (the "AG letter") that the Board should deny Dr. Barson's request.

---

3. Dr. Barson signed the "Consent" page on April 8, 2011. Her attorney signed on the same page. It appears that they then returned it to the Board, and John Papavasiliou, Deputy Director of the Board, signed on May 2, 2011.

In the Administrative Prosecutor's view, the condition Dr. Barson wanted to revise "was an essential component in resolving concerns that she engaged in dangerous prescribing practices, which the Board considered a threat to the health, safety and welfare of the public":

> It is the State's position that the Board should deny Dr. Barson's request to modify the Consent Order. The parties engaged in good faith negotiations when discussing the terms of [the] Consent Order ..., including the condition that she forfeit her DEA or Maryland CDS registration numbers. *Forfeiture of Dr. Barson's DEA registration number was an essential component in resolving concerns that she engaged in dangerous prescribing practices, which the Board considered a threat to the health, safety and welfare of the public. To eliminate that condition and permit Dr. Barson to hold a valid DEA registration number would diminish an important safeguard of the Consent Order, which restricted her ability to prescribe controlled dangerous substances.* To permit [her] to obtain a DEA registration number, enabling her to resume prescribing controlled dangerous substances would be contrary to the best interests of the public.

(Emphasis added.) The Administrative Prosecutor sent a copy of the AG letter to Dr. Barson's counsel.

The Board denied Dr. Barson's request by letter dated August 1, 2011 (the "Board letter"). The Board disagreed that there had been any mistake, referred to the AG letter, and then noted Dr. Barson's representation that she had "fully comprehended the meaning and terms of the Consent Order" when she signed it:

> The Medical Practice Act, Md. Health Occ.Code Ann. and the Code of Maryland Regulations 10.32.02 do not provide for revision of a consent order. Further Dr. Barson knowingly and with advice of counsel entered into the May 2, 2011, Consent Order and acknowledged in her Consent of April 8, 2011, that she signed the order voluntarily and without reservation and that she fully comprehended the meaning and terms of the Consent Order.

Dr. Barson then sought relief in the circuit court by filing a Petition in the Circuit Court for Baltimore City seeking "Judicial Review, Administrative Mandamus, and/or Declaratory Relief." She again took the position that the parties entered into the Consent Order "on the understanding that Dr. Barson would be able to resume her work as an anesthesiologist." She claimed that the Board's refusal to consider her request to revise the Consent Order was arbitrary and capricious because she was unable to "return to the practice of anesthesiology as contemplated by the parties and can not provide the Board with the patient records that are a condition of [the C]onsent [O]rder." And she argued alternatively that the Consent Order was based upon a "fundamental mistake—that Dr. Barson and the Board believed, that the [C]onsent [O]rder was structured in a manner that would permit her to continue to practice anesthesiology. Accordingly the [C]onsent [O]rder is void or voidable under theories of fraud, unilateral mistake, and/or mutual mistake." [4]

On October 7, 2011, the Board filed a Motion to Dismiss the Petition under Maryland Rule 7–204(a). Following a hearing on November 11, 2011, the circuit court issued a written Order granting the Motion to Dismiss on November 22, 2011. Dr. Barson filed a Motion to Alter or Amend Judgment, which the circuit court denied on January 23, 2012, and this timely appeal followed.

---

4. Although Dr. Barson occasionally mentions the term "mutual mistake" in her briefs, she does not actually allege a mutual mistake. A footnote in her initial brief takes the concept as far as she can go with it, but stops short: "*In essence,* this was a mutual mistake of fact. The Board was agreeing that Dr. Barson would be getting her medical license returned, and the Board knew that her sole practice area was anesthesiology." (Emphasis added.) She concedes elsewhere, however, that the mistake *really* at issue here—that she could not maintain her anesthesiology credentials at Dimension Hospital after forfeiting her registration numbers—was hers alone, and she did not discover that mistake until *after* she executed the Consent Order. As such, Dr. Barson has not alleged that the *relevant* mistake was mutual, and we need not analyze whether a mutual mistake might have justified a revision that her unilateral mistake does not.

## DISCUSSION

It is important, at the outset, to frame what is and is not at issue. Dr. Barson does not dispute the validity of the Consent Order or its terms. She does not contend that the Consent Order is the product of fraud, duress, misrepresentation, mutual mistake, or anything else that could cast doubt on its formation. She does not argue that the Board exceeded its authority in negotiating or entering into the Consent Order, or that any provision of the Consent Order violates the law or her constitutional rights. Nor does she express any disagreement about the Consent Order's application or meaning in its as-executed form. Were she alleging these or other legal defects, Dr. Barson may well have had rights to challenge the Consent Order itself, whether under principles of contract or under another independent source of authority.

This is a narrower case. This appeal turns on Dr. Barson's post-agreement rights vis-à-vis the Board, and specifically whether, as Dr. Barson argues, the Board erred in declining her request to revise the Consent Order after the fact, and then whether the circuit court erred in refusing to compel the Board to revise it.[5] Dr. Barson characterizes these decisions as errors of law, either because she believes she was entitled to relief as a matter of law in the circuit court or because she claims that the Board acted arbitrarily and capriciously by declining to revise the Consent Order. As such, we review the decisions below *de novo*. *Talbot Cnty. v. Miles Point*, 415 Md. 372, 384, 2 A.3d 344 (2010) (citing *Belvoir Farms Homeowners Ass'n. v. North*, 355 Md. 259, 267, 734 A.2d 227 (1999) (deci-

---

5. Dr. Barson lists three "questions presented" in her brief:

   I.   Did the Circuit Court err in dismissing the Petition when it held that Dr. Barson was not entitled to either judicial review or administrative mandamus with regard to the Board's denial of her request for reconsideration of the Consent Order?

   II.  Did the Circuit Court err in dismissing Dr. Barson's request for declaratory relief in the Petition without issuing a declaratory judgment?

   III.  Did the Board err in denying Dr. Barson's request for reconsideration of the Consent Order when it held that it did not have the authority to revise the Consent Order?

sions of an administrative agency are owed no deference when the conclusions are based upon an error of law)). And although on this posture we "review[ ] the agency's decision, and not that of the circuit court," *P Overlook, LLLP v. Board of County Comm'rs*, 183 Md.App. 233, 247, 960 A.2d 1241 (2008); *Tabassi v. Carroll County Dep't of Soc. Servs.*, 182 Md.App. 80, 85–86, 957 A.2d 620 (2008); *see also People's Counsel for Baltimore County v. Surina*, 400 Md. 662, 681, 929 A.2d 899 (2007) (the appellate court "looks through the circuit court's ... decision[ ], although applying the same standards of review, and evaluates the decision of the agency"), there is no meaningful difference here—if we were to find that Dr. Barson was entitled to revision by the Board as a matter of law, the circuit court would have erred in failing to order it.

We find no error at either level. Dr. Barson knowingly and voluntarily, with full disclosure and advice of counsel, waived her rights to challenge the terms of the Consent Order. Even still, the Board considered and denied her request for a revision. As a substantive matter, we do not read the Board letter to state that the Board *lacked* authority to revise, and the Board's actions—its request for the Administrative Prosecutor's views and response, albeit brief, to Dr. Barson—undercut such a theory. And under the circumstances, that ends the story: the Board had no obligation to allow Dr. Barson backsies, and Dr. Barson no right to compel them.

## I. Dr. Barson Waived Any Right To Appeal Or Challenge The Terms Of The Consent Order Directly.

We start with the language of the Consent Order itself, in which Dr. Barson not only consented to its terms, but also waived the right to contest its terms or to appeal:

- Dr. Barson agreed "to be bound by this Consent Order and its conditions and restrictions."

- She gave up "any rights [she] may have had to contest the Findings of Fact and Conclusions of Law."

- She acknowledged "the validity of this Consent Order."

- She acknowledged "the legal authority and the jurisdiction of the Board to . . . enforce this Consent Order."

- She affirmed that she was "waiving [her] right to appeal any adverse ruling of the Board that might have followed any . . . hearing."

This leads us first to a proposition that seems obvious but that we have not previously stated expressly: we analyze Dr. Barson's right to challenge the terms of her valid Consent Order, a product of an administrative agency proceeding, according to the same principles of law that govern consent orders issued by courts. This is not because differently sourced consent orders share a common title, but because they serve a common function in resolving disputes or charges in the tribunal of first instance. It is unusual, and should be unusual, for us to review any consent order on a direct appeal posture, since the purpose of a consent order is to end litigation and avoid appeals from the dispute the order resolves.[6] But it is second nature for us to recognize administrative agencies' authority to settle disciplinary matters within their regulatory spheres through consent orders, and to enforce alleged violations in the same manner and according to the same principles as court-approved consent orders. *See, e.g., Cohen v. Maryland State Bd. of Physician Quality Assurance*, 160 Md.App. 277, 283, 863 A.2d 358 (2004) (entry into a Consent Order with the Board of Physicians constituted agreement to the terms "including the provision that if [appellant] failed to meet the terms of the Consent Order, the Board would be able to impose any appropriate disciplinary sanction" (footnote omitted)). And this makes perfect sense in contexts, such as professional discipline of physicians, in which the

---

**6.** It is less unusual for appeals to grow out of litigation prompted by one party's failure to fulfill its obligations under a consent order. *See, e.g., Bayly Crossing, LLC v. Consumer Protection Division*, 188 Md.App. 299, 326, 981 A.2d 777 (2009), *rev'd in part on other grounds*, 417 Md. 128, 9 A.3d 4 (2010). In addition, a party who challenged the validity of a consent order on contract or other substantive principles would normally have the right to seek review if the agency denied such a challenge. *See Chernick v. Chernick*, 327 Md. 470, 610 A.2d 770 (1992). This case raises neither category of challenges.

General Assembly has committed the regulation and enforcement of the governing law to the expertise of an administrative agency such as the Board and in which, as here, parties are required to exhaust administrative remedies before seeking judicial relief. *See, e.g., Comm'n on Med. Discipline v. Bendler*, 280 Md. 326, 329–30, 373 A.2d 1232 (1977) (requiring physician, whose license had been suspended, to exhaust administrative remedies by going first to the Board of Review, before appealing to the circuit court); *County Council v. Billings*, 420 Md. 84, 99, 21 A.3d 1065 (2011) (the " 'agencies first' rule promotes judicial efficiency and protects the exercise of agency discretion").

As a matter both of law and common sense, someone who has agreed to a consent order or consent judgment can't be aggrieved by it. *Suter v. Stuckey*, 402 Md. 211, 222–24, 935 A.2d 731 (2007). As a matter of fairness, a litigant "cannot, knowing the facts, both voluntarily accept the benefits of a judgment or decree and then later be heard to question its validity on appeal." *Suburban Dev. Corp. v. Perryman*, 281 Md. 168, 171, 377 A.2d 1164 (1977). And even beyond those general principles, a party to a consent order can surrender the right to appeal, which " 'may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal.' " *Osztreicher v. Juanteguy*, 338 Md. 528, 534, 659 A.2d 1278 (1995) (quoting *Rocks v. Brosius*, 241 Md. 612, 630, 217 A.2d 531 (1966)); *see also In re Nicole B.*, 410 Md. 33, 64, 976 A.2d 1039 (2009) (a party "is not entitled to appeal from a judgment or order if that party consented to or acquiesced in that judgment or order").

By entering into this indisputably valid Consent Order, Dr. Barson spared herself the cost, stress, uncertainty, and potentially-even-more-serious consequences of proceeding to an administrative hearing. She knew and acknowledged, after consulting with counsel who read and approved its terms, that the deal included agreements to forfeit her registration numbers during the period of her probation and to waive her rights to

challenge the terms of the Consent Order or to appeal them. She does not argue that the Consent Order is void or voidable, procured by fraud or misrepresentation, nor was the mistake on which she relies mutual. On this posture, then, Dr. Barson had no right to challenge or appeal directly the terms of the valid and enforceable Consent Order, and the Board, having agreed to a "no backsies" resolution of these serious charges, did not commit an error of law by holding her to her waiver and declining her request for a revision.

## II. No Law Or Regulation Entitled Dr. Barson To Revision Or Judicial Review.

No other applicable law changes the outcome. Dr. Barson devotes the bulk of her briefs to arguing that various provisions of the Health Occupations Article and its regulations and of the Administrative Procedures Act entitled her to a revision and compelled the circuit court to grant her relief when the Board declined to do so. These arguments proceed in part from the mistaken premise that the Board based its refusal of her request to revise the Consent Order on a belief that it lacked statutory authority to do so in the first place. Rather than expressing a lack of authority, we read the Board letter's statement that "[t]he Medical Practice Act ... and the Code of Maryland Regulations ... do not provide for revision of a consent order" to say that nothing in those authorities entitled Dr. Barson to a revision or required the Board to grant one, a proposition with which we agree (as we explain below). From there, the Board relied on Dr. Barson's knowing and voluntary execution of the Consent Order and the Board's decision to ratify it in declining to reconsider the request further.

Nevertheless, we have reviewed the potentially relevant statutes and regulations and find none that compelled the Board to consider revising the Consent Order. *First*, Dr. Barson cites the Medical Practice Act, which authorizes the Board to "[a]dopt rules and regulations," Health Occ. § 14–205(a), that are found in the Code of Maryland Regulations ("COMAR"). The section of COMAR in effect at the time of Dr. Barson's letter that, she claims, required the Board to

revisit the Consent Order in fact describes the Board's obligation to issue orders in enforcement proceedings:

(1) The Board shall issue, ordinarily within a maximum of 90 days, a final order of either dismissal, revocation, suspension, denial of licensure, reprimand, probation, fine, or other disposition as appropriate.

(2) After the Board issues its order, either party may file a motion for reconsideration with the Board which is granted at the Board's discretion. There is no automatic right to a hearing before the Board, and the Board may or may not ask for a response from the opposing party.

Md.Code Regs. 10.32.02.03(G)(1), (2) (2012). The section immediately preceding defines a "final order" to include a consent order:

the final decision of the Board which contains findings of fact, conclusions of law, and a disposition which:

(a) Denies a license;

(b) Sanctions by reprimand, probation, fine, consent order, suspension, or revocation;

(c) Dismisses charges; or

(d) Surrenders a license.

*Id.* 10.32.02.02(B)(13) (2012). But at most, these regulations stand for the unremarkable proposition that a party *may* file a motion for reconsideration from a final order that resolves an enforcement proceeding. Putting aside the fact that Dr. Barson never cited these provisions to the Board in the first place, *and* treating her letter of July 12, 2011 as a motion (which is a stretch), the regulations state only that a motion for reconsideration "is granted at the Board's discretion," with "no automatic right to a hearing," and that the Board "may or may not" ask for a response. To the extent these regulations applied, and we do not find that they did, the Board complied: it asked the Administrative Prosecutor to respond, then denied the request for reasons it stated, if briefly.

■ *Second,* once the Board declined to consider Dr. Barson's request, she was entitled to further review of the Board's decision only to the extent authorized by statute. *See* Md. R. 7–201(a); *Oltman v. Maryland State Bd. of Physicians,* 182 Md.App. 65, 73, 957 A.2d 611 (2008). The operative law here is Health Occ. § 14–408, which authorizes administrative and judicial review for parties aggrieved by final orders in contested cases:

(a) *In general.*—Except as provided in this section for an action under § 14–404 of this subtitle or § 14–5A–17 of this title, any person aggrieved by a final decision of the Board in a contested case, as defined in the Administrative Procedure Act, may:

(1) Appeal that decision to the Board of Review; and

(2) Then take any further appeal allowed by the Administrative Procedure Act.

Again, we assume for present purposes (without deciding) that the Consent Order was a final order and that, although *now* resolved, the Board's enforcement proceeding *began* as a "contested case." *See Modular Closet Systems, Inc. v. Comptroller,* 315 Md. 438, 445, 554 A.2d 1221 (1989) ("In none of these opinions has the Court's contested case analysis focused on the timing of the proceedings or the stage at which the dispute terminates. Rather, the Court has focused on whether the nature of the dispute entitles the parties to a hearing to determine their rights and duties."). Once she settled the charges through the Consent Order, Dr. Barson no longer qualified as "aggrieved," particularly given that she specifically waived the right to contest the Board's findings, and her case transformed from a contested case into a resolved case. Had she fought the charges and lost, Dr. Barson would have been entitled to review of the ensuing final order, even if the sanctions were exactly the same as those to which she agreed. But by resolving the charges in a Consent Order, Dr. Barson changed her relationship vis-à-vis the Board and the outcome of the previously contested case—in essence, she agreed that she was no longer aggrieved, and waived that status in exchange for the certainty of the otherwise-contested outcome.

■ *Finally,* Dr. Barson argues that the circuit court should have granted her request for administrative mandamus. Here, Dr. Barson seeks to invoke the authority of Chapter 7–401 of the Maryland Rules, which allows for "judicial review of a quasi-judicial order or action of an administrative agency where review is not expressly authorized by law." Md. R. 7–401(a). Maryland Rule 7–403 provides for administrative mandamus in an agency action under limited circumstances:

> The court may issue an order denying the writ of mandamus, or may issue the writ (1) remanding the case for further proceedings, or (2) reversing or modifying the decision if any substantial right of the plaintiff may have been prejudiced because a finding, conclusion, or decision of the agency:
>
> (A) is unconstitutional,
>
> (B) exceeds the statutory authority or jurisdiction of the agency,
>
> (C) results from an unlawful procedure,
>
> (D) is affected by any error of law,
>
> (E) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted,
>
> (F) is arbitrary or capricious, or
>
> (G) is an abuse of discretion.

*Id.* We disagree with Dr. Barson's claim that a plaintiff is "entitled" to administrative mandamus simply because "an agency action prejudices a substantial right of the plaintiff." Rather, the agency action must take the form of a "finding, conclusion, or decision of the agency" that errs in one of the listed manners, and the Court *"may"* reverse or modify that decision if jurisdiction, as a preliminary matter, is proper.

In this case, the circuit court correctly relied on *Perry v. Department of Health & Mental Hygiene,* 201 Md.App. 633, 30 A.3d 262 (2011), in concluding that it lacked jurisdiction to grant mandamus based on Dr. Barson's failure to show a "clear legal right or protected interest" in having her registration numbers reinstated. *See id.* at 637, 30 A.3d 262. In

*Perry,* the circuit court dismissed a petition for administrative mandamus, because the petitioner did not have a "substantial right" to the promotion that she was denied—the petitioner could not have a "substantial right" in a position that she had never held. *Id.* at 640, 30 A.3d 262; *see also Oltman,* 182 Md.App. at 77–78, 957 A.2d 611 (physician assistant had no protected property interest in a certificate that had been revoked properly). Here, the formerly aggrieved party, Dr. Barson, specifically *forfeited* the right to the registration numbers at issue when she freely entered into the Consent Order, and that forfeiture created a jurisdictional void that the circuit court correctly declined to fill.

Whatever rights Dr. Barson may once have had to those registration numbers, she waived them. And after acknowledging the validity of the Consent Order and representing to the Board, as a condition of achieving an agreed resolution of the Board's charges, that she "voluntarily sign[ed] this Order, and underst[ood] its meaning and effect," Dr. Barson cannot now invoke extraordinary relief in equity on the grounds that her own representations were not quite true after all.[7] She was welcome to ask the Board to consider revising the Consent Order, and she did. But her acceptance of the terms of the Consent Order and the impact of its meaning and effect left any decisions about future revisions to the administrative discretion (or grace) of the Board, which in turn was free to hold Dr. Barson to her agreement.

We find no error, either in the Board's decision not to revise the Consent Order or the circuit court's decision to dismiss

---

7. The same is true for her claim that the circuit court should have granted a declaratory judgment. Although Dr. Barson is correct that dismissal of a declaratory judgment action is not appropriate when there are *factual* controversies that must be decided on the merits, the disagreement here relates entirely to her rights *vel non* to relief as a matter of law. *See Polakoff v. Hampton,* 148 Md.App. 13, 26, 810 A.2d 1029 (2002); *see also* Md.Code (2013), § 3–409(a) of the Courts & Judicial Proceedings Article (providing that "a court *may* grant a declaratory judgment ... in a civil case" (emphasis added)). As such, a declaratory judgment action would be no more appropriate here than administrative mandamus.

Dr. Barson's petitions for judicial review, administrative mandamus, and declaratory judgment. No backsies.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**