REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1817

September Term, 2015

———————————————————

THEODORE PRIESTER

v.

BALTIMORE COUNTY, MARYLAND, *et al.*

———————————————————

Meredith,
Nazarian,
Leahy

JJ.

———————————————————

Opinion by Leahy, J.

———————————————————

Filed:  March 29, 2017

Appellant Theodore Priester, a firefighter, exercised his rights under the administrative grievance process established by a memorandum of understanding between his union and his employer, Baltimore County—the appellee here—to challenge the County's termination of his employment. After a four-member administrative hearing board deadlocked and was unable to reach a final decision on his *de novo* appeal, the board notified Priester that it would rehear his grievance. Before the board scheduled a new hearing, Priester filed suit seeking writs of administrative and traditional mandamus in the Circuit Court for Baltimore County, asking the court, *inter alia*, to order that the board issue its preliminary tied vote as a final order. The circuit court granted summary judgment in favor of the County, and Priester appealed.

We hold that because the board has not yet issued a final order and plans to rehear the appeal, Priester has not exhausted his administrative remedies, and his action does not fall within a recognized exception to the exhaustion doctrine. Therefore, the underlying mandamus action was not properly before the circuit court and should have been simply dismissed.

## BACKGROUND

The Baltimore County Fire Department ("Department") began an investigation in March of 2013 into allegations that Fire Captain Theodore C. Priester, Jr., sexually harassed a female subordinate and created a hostile work environment. During the

investigation, other female employees came forward with similar allegations.[1]

On April 9, 2013, the Department issued a "Notification of Charges and Specifications" to Priester. The Notice assimilated a litany of charges by female employees and others concerning Priester's alleged offensive, predatory, and discriminatory behavior over the course of several years.[2] The Notice advised Priester that a hearing on the charges would be conducted before the Department's Administrative Hearing Board. Included with the Notice was a copy of the County's personnel policies and procedures.

The Administrative Hearing Board held that hearing on April 30, 2013, and found Priester guilty of violating 18 separate Department rules and regulations, as well as three provisions of the Baltimore County Code. The Hearing Board recommended unanimously that the County terminate Priester's employment. Fire Chief John J. Hohman hand-delivered to Priester a copy of the Hearing Board's recommendation, as well as a letter the Fire Chief signed indicating that he was upholding that

---

[1] Priester contends that the investigation was initiated on allegations by a single female firefighter, and then "the County's investigation expanded into a far-reaching search for other incidents, stretching over a two and a half year period, that may, or may not, have been an appropriate basis for [his] discharge."

[2] Priester had already signed an agreement with the Department titled "Restriction on Contact during an Active Disciplinary Investigation" on March 26, 2013. Yet, Priester's Notice of Charges reported that "while visiting the funeral home for the father of a shift member, Priester told the shift members present the names of each complainant and indicated they would pay for it." The Notice stated further that he "indicated he had an attorney and would be back to work Saturday (presumed to be April 6, 2013)[,]" and that "he was going to make their lives miserable (referring to the complainants)." The Notice characterized his behavior as "a direct and blatant effort to intimidate the witnesses."

recommendation. The letter also advised Priester that he could choose one of two routes to appeal his termination: (1) "request that the Fire Chief reconsider the recommendation of the Administrative Hearing Board"; or (2) "file a grievance that would begin at Step 4" of the five-step appellate process set forth in the Memorandum of Understanding ("MOU") between the County and Priester's union, the Baltimore County Professional Fire Fighters Association, I.A.F.F. Local 1311.[3] The County issued a formal notice of dismissal, signed by both Fire Chief Hohman and County Director of Human Resources, George Gay, deeming Priester's termination effective as of May 16, 2013.

Priester chose to appeal his termination pursuant to grievance procedures outlined in the MOU. His termination was then upheld through Step 4, by Fire Chief Hohman, and Step 5, before the Administrative Law Judge for Baltimore County ("ALJ"), who issued an eight-page decision on October 21, 2013.

Priester exercised his final right of appeal in the grievance process and appealed the ALJ's decision to the Personnel and Salary Advisory Board ("PSAB" or "Board"), before which he was entitled to a *de novo* contested case hearing pursuant to Baltimore County Charter, Article VIII, § 803. Section 803 confers on the PSAB exclusive jurisdiction over a grievant's final administrative appeal, and provides that the Board's decision shall be final and binding on the parties involved. Priester exercised his right to appeal to the PSAB on November 4, 2013.

---

[3] Steps 1-3 of the MOU's grievance process, respectively, permit union employees to bring grievances to their immediate supervisor, Battalion Chief, and/or Division Chief.

Four days later, his counsel apparently sent the PSAB a letter inquiring into its procedures that would govern Priester's hearing and appeal.[4]  The PSAB's counsel responded, advising him of the procedure for subpoenaing witnesses and stating:

> Consistent with §3-3-1305 of the Baltimore County Code, 2003, the Board has not chosen to adopt a formal set of rules, or to require adherence to either the Rules of Procedure or the Rules of Evidence applicable in the courts of Maryland.  The hearing is an informal proceeding designed to give all parties an opportunity to present a fair case without the need to retain counsel.
>
> Regarding compelling witnesses to appear, the Board requests that the parties in a hearing provide the list fifteen (15) working days prior to your scheduled hearing.  Your request must indicate what department the employee is employed by, the supervisor's name, and the employee's job function.  You must also indicate in your request, the purpose and nature of each witness' testimony.  We are only able to serve subpoenas approved by the Board within the confines of Baltimore County.  Please be aware that the power of the Board to subpoena County employees, as stated at §3-3-1305(b)(3)(iii), is discretionary.  As such the Board reserves the right to deny a request to subpoena or not hear from a witness, if it deems the testimony repetitive, cumulative to [or] otherwise irrelevant to the facts of the matter under consideration.

Over the course of three days between March and May of 2014, a quorum of four PSAB members heard Priester's appeal.  The proceeding concluded on the third day, May 30, 2014, at which point the four members convened in private and voted.  Two members voted in favor of Priester's termination and two members voted in favor of reinstating Priester without back pay.  Still without a decision from the PSAB on July 31, 2014, Priester filed with the County an application for retirement seeking pension

---

[4] A copy of this letter is not in the record on appeal.

benefits.[5]

On August 12, 2014, PSAB Chairman Terrance Sheridan sent Priester's counsel a letter informing him that the PSAB had constructed "a draft Order in the matter of Theodore Priester," but that "the PSAB had a . . . 2-2 tie in the Priester matter."[6] The letter explained that the Board's counsel and Secretary had both confirmed for Chairman Sheridan that in the event of a tie, the PSAB's past practice has been to uphold the lower ruling. "Nevertheless," the letter concluded, "[Chairman Sheridan] has asked the PSAB's Secretary to set the . . . Priester matter[] in for new hearings before the PSAB as soon as possible[.]" Then on October 15, 2014, Secretary to the Board, George Gay—who had previously signed Priester's Notice of Dismissal in his other role as Director of Human Resources—sent Priester's counsel a follow-up letter notifying him that, a week prior, the PSAB formally voted to rehear Priester's appeal and that his counsel would be advised of

---

[5] The Board of Trustees of the Employees' Retirement System denied Priester's application for honorable retirement and pension benefits. Priester's appeal of that decision is currently before this Court. *Priester v. Board of Appeals*, No. 1030, September Term 2016.

[6] In the letter, the Chairman referred to another matter in which the PSAB split 2-2 involving Kenneth E. Larrick, explaining that:

> The Larrick Order contained the following statement: "Past practice of the [PSAB] in the highly irregular instance of a stalemate, a situation that has not arisen during the tenure of any of the current Board members or current counsel, is to revert to the lower ruling, a practice confirmed by past counsel to the Board and the Board's Secretary." The draft Priester Order took a similar approach to the tie vote. I am confident that past counsel and the Secretary accurately conveyed the history of this Board. . . .
> Nevertheless, I have asked the PSAB's Secretary to set the Larrick and Priester matters in for new hearings before the PSAB as soon as possible given the schedule of hearings currently established.

5

the hearing's date, time, and location.

Three months later, the PSAB had not set a date for a rehearing or taken further action, and on January 15, 2015, Priester filed a complaint in the Circuit Court for Baltimore County for writs of administrative mandamus, invoking Maryland Rule 7-401 through 7-403,[7] and traditional mandamus under Maryland Rule 15-701.[8] The complaint sought, among other things, orders compelling the PSAB: (1) to adopt formal rules; (2) to issue its 2-2 decision; and (3) reinstate Priester's employment. Priester claimed that the PSAB violated his due process rights by failing to comply with its statutorily mandated duty to promulgate rules and determine its own procedures pursuant to Baltimore County Code, § 3-3-1305(a), and that the PSAB had not complied with its duty under the MOU

---

[7] Administrative mandamus "is an appropriate remedy for review of a quasi-judicial order or action of an administrative agency only when no other right of appeal is provided by state or local law. Ordinarily, administrative finality is required." Committee Notes to Maryland Rule 7-401 (internal citations omitted).

[8] Traditional mandamus, also known as commonlaw mandamus, is a "prerogative writ" that courts may issue "'to prevent disorder, from a failure of justice, where the law has established no specific remedy, and where in justice and good government there ought to be one.'" *Wilson v. Simms*, 380 Md. 206, 216 (2004) (quoting *Runkel v. Winemiller*, 4 H & McH. 429, 449 (Gen. Ct. Oct. Term 1799)). A court may grant the writ when a person has "'a right to execute an office, perform a service, or exercise a franchise, and a person is kept out of possession, or dispossessed of such right, *and has no other specific legal remedy*.'" *Id.* (emphasis added) (quoting *Runkel*, 4 H & McH. at 449). Thus, to sustain a writ of mandamus, the petitioner must demonstrate: (1) a clear and undisputable personal or property right; (2) a government body or agent's corresponding ministerial, non-discretionary duty, the exercise of which does not require judgment; and (3) the absence of "any ordinary adequate legal remedy." *George's Creek Coal & Iron Co v. Allegany Cnty. Comm'rs*, 59 Md. 255, 259 (1883); *see also Wilson*, 380 Md. at 223 (quoting *Green v. Purnell*, 12 Md. 329, 336 (1858) ("[A] writ of mandamus 'cannot issue in a case where discretion and judgment are to be exercised by the officer; and it can be granted only where the act required to be done is merely ministerial, and the relator without any other adequate remedy.'").

6

to "render a final and binding decision on the grievance as soon as possible." Additionally, he asserted that the PSAB does not have discretion to withhold a decision once it votes. For all of these reasons, he argued, the Board's decision to rehear the case was an illegal procedure lacking statutory or regulatory authority.

The County responded by filing a motion to dismiss, or in the alternative, a motion for summary judgment, or to stay proceedings pending resolution by the PSAB. In support of its motion, the County argued that there was no final decision from which Priester could appeal; that Priester had not exhausted his administrative remedies; that there is no decisional law in Maryland preventing the PSAB from deciding to rehear an administrative appeal that results in a tie vote; and that it would be improper for the court to require the PSAB to adopt written rules of procedure because the County Code does not require written rules and Priester has failed to show that the Board violated its mandate in any way.

Priester opposed the County's motion by filing what he characterized as a cross-motion for summary judgment. In the memorandum supporting that motion, he argued that his action for mandamus was proper because he had demonstrated a "clear and undisputable legal right" to have his case heard and decided, and that the PSAB had a corresponding non-discretionary legal duty to hear and decide his case. Priester insisted that the exhaustion doctrine did not apply to his case because the PSAB's decision to re-hear his appeal was an unauthorized procedure, and that even if the doctrine did apply, he had exhausted his remedies by taking part in one PSAB hearing. Priester also restated the due process and fundamental fairness arguments he made in his original filing.

The court held a hearing to consider these motions on August 14, 2015. Ruling from the bench, the judge summarily rejected Priester's claims, stating that it was up to the PSAB to determine the next step in its procedures, and granted summary judgment in the County's favor.[9] Priester noted his timely appeal to this Court, presenting the following questions:

I. "Did the circuit court err in failing to issue a writ of mandamus compelling the PSAB to comply with its mandatory and ministerial duty to promulgate and adopt, through notice and comment rulemaking, procedural regulations as required by the Baltimore County Code, § 3-3-1305(a)?"

II. "Did the circuit court err in failing to compel the PSAB to perform its ministerial duty to formally issue its 2-2 decision, and preventing the PSAB's unauthorized attempt to re-hear Priester's personnel case?"

III. "Did the circuit court err in failing to issue an administrative writ of mandamus ordering that Priester be reinstated because it is undisputed that the county failed to convince a majority of the PSAB that a preponderance of the evidence supported his termination?"

**DISCUSSION**

**I.**

Before we consider the merits of an appeal, we must first be certain the action is justiciable. The County challenges justiciability on two grounds. First, it contends that

---

[9] On September 24, 2015, the circuit court entered a written order stating that it granted the County's motion for summary judgment, denied Priester's cross-motion for summary judgment, and dismissed Priester's complaint. Although the circuit court did not specify its rationale for granting summary judgment in the County's favor, it is of no consequence to our review, because we "review[] a circuit court's grant of summary judgment for legal correctness under a non-deferential standard of review." *Bd. of Pub. Works v. K. Hovnanian's Four Seasons at Kent Island, LLC*, 443 Md. 199, 214-15 (2015) ("*Hovnanian II*").

8

Priester's administrative appeal is not yet ripe for judicial review because the PSAB has not issued a final decision, meaning that Priester has not exhausted his administrative remedies. The Court of Appeals has instructed that exhaustion of administrative remedies is a threshold issue that we treat "'*like* a jurisdictional issue. Consequently, . . . exhaustion of administrative remedies will be addressed by this Court sua sponte even though not raised by any party.'" *Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 487 (2011) (quoting *Bd. of Educ. for Dorchester Cnty. v. Hubbard*, 305 Md. 774, 787 (1986) (emphasis in *Hubbard*)).

Second, the County argues that Priester's appeal is moot because he retired from the Fire Department when he sought his retirement benefits before the PSAB heard his appeal, thereby depriving the PSAB of its ability to reinstate Priester—his desired remedy. Mootness, like administrative exhaustion, is a threshold issue that we must consider before addressing the merits of the questions presented. *Suter v. Stuckey*, 402 Md. 211, 219 (2007). The central question in the County's mootness claim, however, is whether, upon application for retirement benefits, Priester permanently resigned his position and foreclosed his opportunity to pursue a grievance under the MOU.

We decline to address the mootness issue for several reasons. To begin with, our determination that Priester failed to exhaust his administrative remedies before he sought judicial review is dispositive.[10] Additionally, the issues concerning Priester's

---

[10] We found no Maryland case delineating a preferred order in which courts must address these threshold questions of justiciability, and the Supreme Court has ruled that, in the federal context, "there is no mandatory 'sequencing of jurisdictional issues.'" *Continued . . .*

employment status, eligibility for retirement benefits, and ability to pursue a grievance are questions of law and fact that were not addressed by the PSAB because Priester had not applied for retirement benefits before the first hearing, and the PSAB has not moved forward with the second hearing, presumably, pending this appeal.[11]  Indeed, the problem we have addressing the County's mootness argument also confirms the rationale underlying the exhaustion requirement; namely, we do not have the appropriate record before us nor the appropriate expertise to decide this question presented for the first time on judicial review.  *See Halici v. City of Gaithersburg*, 180 Md. App. 238, 248 (2008) (concluding that the question of whether a commission member was not qualified to sit on the Historic District Commission when it rendered its decision in the case, and any consequences thereof, were not properly before this Court for review because the failure to raise the issue before the administrative agency was a failure to exhaust administrative remedies and an improper request for "'the courts to resolve matters *ab initio* that have been committed to the jurisdiction and expertise of the agency.'" (quoting *Chesley v. City of Annapolis,* 176 Md. App. 413, 427 n.7 (2007))).

---

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).  "The principle underlying these decisions" is that "'jurisdiction is vital only if the court proposes to issue a judgment on the merits.'"  *Id*. (quoting *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006)).  Discerning no mandatory order in which courts must address certain threshold jurisdictional questions, we determine the exhaustion issue is dispositive under the circumstances of this case.

[11] It is unclear from the record whether the PSAB has stayed Priester's proceedings or is simply awaiting the disposition of his appeal.  Priester does not suggest that the Board's delay in doing so is prejudicial or that the Board has refused to grant him a re-hearing.

Accordingly, we shall confine our discussion to an analysis of Priester's failure to await a final administrative order before seeking judicial review. *See Sinochem*, 549 U.S. at 431 (Federal courts have "leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas,* 526 U.S. at 584)).

## A. Administrative Exhaustion

The County's exhaustion argument can be subdivided into two parts. First, that the PSAB has not issued a final decision, and Priester may not seek judicial review until he has received a final administrative decision. Second, without a final decision, Priester has not exhausted his statutorily prescribed administrative remedy, also bearing the consequence that he may not seek judicial review until he does. Priester responds that he has taken all necessary steps to obtain a final decision, and that the exhaustion doctrine does not apply to his case under certain recognized exceptions.

## 1. The Agency's Decision Must Be Final

The County argues that, under the basic tenets of finality, the PSAB has yet to issue a final decision because it has not rendered a decision that disposes of the case, adjudicates the parties' rights, and leaves nothing further for it to decide. Without a final decision, the County continues, Priester's action was not properly before the circuit court because there is no final judgment by the PSAB, and therefore, Priester has failed to exhaust his administrative remedies. The County relies mainly on *Renaissance Centro*, 421 Md. 474, arguing that the Court of Appeals held there that a 2-2 tie vote is not a final decision for the purpose of administrative exhaustion. Priester may not challenge the PSAB's decision to rehear his appeal, according to the County, because the Board never

11

issued its preliminary vote as a final administrative decision.

Priester reiterates the position he advanced in the circuit court: that by requesting and participating in the *de novo* appeal before PSAB, he has done all that was required for him to exhaust his administrative remedies. In other words, Priester believes that it is of no consequence that the PSAB did not issue a decision at the hearing's conclusion because he took all the steps required of him personally.

When a legislature provides an administrative remedy as the exclusive or primary means by which an aggrieved party may challenge a government action, the doctrine of administrative exhaustion requires the aggrieved party to exhaust the prescribed process of administrative remedies before seeking "*any other*" remedy or "invok[ing] the ordinary jurisdiction of the courts." *Soley v. State Comm'n on Human Relations*, 277 Md. 521, 526 (1976) (emphasis added).[12] The Court in *Solely* explained that the exhaustion rule is based, in part, on the "discretionary nature" of agency decisions and the "expertise" that "the agency can bring to bear in sifting the information presented."

---

[12] As early as 1941, the Court of Appeals held that courts are without jurisdiction to consider issues over which the legislature has conferred authority to administrative tribunals. *Williams v. Tawes*, 179 Md. 224 (1941). In *Tawes*, the Court found that a court was without jurisdiction to issue a declaratory judgment when the taxpayer-petitioner had not complied with the "special statutory remedy" that the legislature had created "for the trial of issues arising under the income tax statute." *Id.* at 225-29. This principle dates back much further, however. In 1848, the Court of Appeals found that a party could not resort to courts of equity when "legislative enactments upon the subject have provided the tribunal and means of redress, and there only can it be successfully sought." *Methodist Protestant Church, E. Baltimore Station v. Mayor, etc., of City of Baltimore*, 6 Gill 391, 402 (1848). The Court in *Methodist* derived this rule from the principle that a party cannot seek redress in equity after he has failed to avail himself to a remedy prescribed at law. *Id.* (citing *Gott v. Carr*, 6 G & J 309, 312 (1834)).

*Id.*

The rule of finality overlaps the rule of exhaustion. *Renaissance Centro*, 421 Md. at 485. "[A] party must exhaust the administrative remedy **and** obtain a final administrative decision . . . before resorting to the courts." *Laurel Racing Ass'n, Inc. v. Video Lottery Facility Location Comm'n*, 409 Md. 445, 460 (2009) (emphasis added). The stage of the administrative review process from which the party seeks judicial review is where the main distinction between the doctrine of finality and the doctrine of exhaustion is revealed. Exhaustion requires a grievant to invoke and pursue the administrative process until he or she receives a final decision from the agency at the utmost level of the administrative hierarchy. For instance, Priester could not have sought judicial review of the ALJ's decision—even though that decision was final—without first invoking the statutorily prescribed *de novo* appeal to the PSAB. Finality, on the other hand, refers to the quality of decision by the agency atop the hierarchy—meaning that Priester cannot seek review of the PSAB's interlocutory decisions until the Board issues a final order disposing of his appeal. *See Dorsey v. Bethel A.M.E. Church*, 375 Md. 59, 74–75 (2003). We begin by addressing finality, because without a final administrative decision, there ordinarily is no exhaustion. *Renaissance Centro*, 421 Md. at 485.

The rule of finality limits judicial intervention during the administrative process to promote the efficiency that the legislature attempted to achieve through the administrative process, and relieves courts of the need "to decide issues which perhaps would never arise if the prescribed administrative remedies were followed." *Soley*, 277 Md. at 526. In this way, the administrative exhaustion doctrine is "a policy embodied in

13

various enactments of the General Assembly." *Maryland Comm'n on Human Relations v. Baltimore Gas & Elec. Co.*, 296 Md. 46, 51 (1983). By vesting authority in administrative agencies, the legislature signals its belief that the agencies' expertise on those issues exceeds that of the courts. This principle was expressed in *Maryland-National Capital Park & Planning Commission v. Washington National Arena*, when the Court of Appeals examined the statutory provisions delineating the authority of the Maryland Tax Court, and observed:

> Presumably, in enacting such an intricate and comprehensive mechanism for the review of property tax determinations, the General Assembly sought to afford the taxpaying public a systematic and efficient method of fact-finding and policy-formation in an area where many of the day-to-day problems of administration either lie beyond the conventional competence of the courts because of the technical complexity of the subject matter or, because of their routine nature, are not properly suited for resolution in formal adjudicatory proceedings.

282 Md. 588, 597-98 (1978).

Even when a petitioner alleges that the administrative agency is acting ultra vires or illegally, a petitioner cannot seek judicial review of an interlocutory decision by that agency unless an interlocutory appeal is authorized by statute. *See Maryland Comm'n on Human Relations v. Mass Transit*, 294 Md. 225, 233 (1982) (1982) [hereinafter "MTA"] ("This Court has consistently held that statutorily prescribed administrative and judicial review remedies must be exhausted in cases involving the interpretation of statutory language."). The petitioner must await a final decision before challenging the agency action in court. *Laurel Racing*, 409 Md. at 468; *Soley*, 277 Md. at 528; *Intercom Sys. Corp.*, 135 Md. App. at 634.

"[A]n agency order is not final when it is contemplated that there is more for the agency to do." *Kim v. Comptroller*, 350 Md. 527, 533-34 (1998) (citations omitted). Thus, "[t]o be 'final,' the order or decision must dispose of the case by deciding all questions of law and fact and leave nothing further for the administrative body to decide."[13] *Willis v. Montgomery Cnty.*, 415 Md. 523, 534 (2010) (citations omitted); *see also* Arnold Rochvarg, Principles and Practice of Maryland Administrative Law 190 (2011) ("The action of an administrative agency is final if it determines or concludes the rights of the parties, or if it denies the parties means of further prosecuting or defining their rights and interests in the subject matter in proceedings before the agency, thus leaving nothing further for the agency to do.").

> The Court of Appeals explained that the purpose of the finality rule is
>
> > to avoid piecemeal actions in the circuit court seeking fragmented advisory opinions with respect to partial or intermediate agency decisions. Not only would a contrary rule create the real prospect of unnecessary litigation, as a party choosing to seek review of an unfavorable interlocutory order might well, if the party waited to the end, be satisfied with the final administrative decision, but the wholesale exercise of judicial authority over intermediate and partial decisions could raise serious separation of powers concerns.

*Driggs Corp. v. Maryland Aviation Admin.*, 348 Md. 389, 407-08 (1998).

*Renaissance Centro* is most analogous and instructive to the current appeal. 421 Md. 474 (2011). In *Renaissance Centro*, Mr. Broida (and several other opponents)

---

[13] In the federal context, the Supreme Court has explained that generally, finality of agency actions has two requirements: (1) "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature"; and "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted).

appealed the county planning board's approval of a site development plan to a county hearing examiner, who dismissed the appeal after determining that the opponents lacked standing because they were not specially aggrieved. 421 Md. at 477-78. The opponents then filed an appeal under § 16.304(a) of the Howard County Code, which authorized *de novo* review of the hearing examiner's decision before the County Board of Appeals. *Id.* at 478.

The Board of Appeals conducted a hearing with only four of its five members (due to illness, one member could not participate), and without objection from any party. *Id.* After the Board's unanimous decision that three of the opponents did not have standing, the Board took a "straw vote" as to whether Mr. Broida had standing, which resulted in a 2-2 tie. *Id.* at 478-79. After deliberating in closed session about what to do, the board "announced that it would not then decide Broida's standing and that, upon their confirmation, [] two new [Board] members would listen to the tape recording of the four-day hearing and would review the record. The new Board would . . . reconvene, deliberate, and vote on Broida's standing to appeal the Board." *Id.* at 479. Renaissance sought a declaratory judgment in circuit court, arguing "that, because of the 2 to 2 vote, Broida's appeal to the Board of Appeals must be dismissed, that both Maryland Law and the Howard County Code require dismissal of Broida's appeal, that it would be improper for the Board to re-deliberate and re-vote, and that it would be improper for the new members to vote." *Id.* at 480 (internal quotations and brackets omitted). This Court concluded that the straw vote constituted a final decision and considered the merits of the action. *Id.* at 482.

16

The Court of Appeals granted certiorari and reversed, finding it "obvious that the Board of Appeals' 2 to 2 'straw vote' was not a final administrative decision in light of the Board's planned action to convene later and re-vote." *Id.* at 490-91 (citation omitted). The Court remanded the case with instructions to dismiss the declaratory judgment action, "[b]ecause there was no final administrative decision, both the Circuit Court and the Court of Special Appeals erred in reaching the merits of this case." *Id.* at 491. The Court reasoned that "Renaissance's contention that the Board of Appeals' planned action would be unauthorized and improper also does not excuse or cure the lack of a final administrative decision and the failure to exhaust the administrative remedy." *Id.* at 490. "The appropriate time to argue that the decision of an administrative agency was not in accordance with the law is in a judicial review action, *after* the rendering of a final administrative decision." *Id.* (emphasis in original); *see also Board of Public Works v. K Hovnanian's Four Seasons at Kent Island, LLC*, 443 Md. 199, 221 (2015) [hereinafter *Hovnanian II*] (reaffirming that *Renaissance Centro*, 421 Md. at 491, held that Renaissance "failed to exhaust administrative remedies *and* await a final administrative decision" (emphasis added)).

Here, Fire Chief Hohman's April 30 letter to Priester notified him that he had two options by which he could challenge his termination; Priester chose the MOU's five-step grievance process that concludes with a hearing before the PSAB. The Baltimore County Charter provides that "[i]n the case of appeal" the PSAB has exclusive jurisdiction and "its decision shall be final on all parties concerned." Baltimore County Charter, Article VIII, § 803. The PSAB has not yet issued its final order with respect to Priester's

17

appeal.[14]  As the Court of Appeals held in *Renaissance Centro*, an agency has not made a final administrative decision when its preliminary vote ends in a tie and the agency plans to re-vote rather than issue an order.[15]  421 Md. at 490-91.

Priester's complaint that the Board's decision to re-vote was improper and unsupported by its enabling statute is not ripe for judicial review, just as in *Renaissance Centro*, until "*after* the rendering of a final administrative decision."  *Id.* at 490 (emphasis in original) (citations omitted).  The rule of finality keeps the judiciary from deciding issues that "perhaps would never arise if the prescribed administrative remedies were followed."  *Soley*, 277 Md. at 526.

Contrary to Priester's contention, the *de novo* posture of the PSAB hearing does not change this result.  Priester directs us to a series of cases in which courts found that a tied final vote must be decided against the party that carried the burden of proof.  *See, e.g.*, *Forks of the Patuxent Improvement Ass'n, Inc. v. Nat'l Waste Managers/Chesapeake*

---

[14] Priester may not avoid finality by seeking interlocutory relief through mandamus.  As the Court explained in *Hovnanian II*, absent a legislative grant providing explicitly for interlocutory appeals from an administrative agency—of which there is none here—a petitioner seeking judicial review prior to a final administrative decision must show immediate and irreparable harm.  443 Md. at 222.  Priester has made no such showing.  We do not know how the PSAB's final order will affect Priester's rights until the Board actually issues a final order, and we should not speculate, for doing so "'would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State.'"  *Hickory Point P'ship v. Anne Arundel Cnty.*, 316 Md. 118, 129-30 (1989) (citation omitted).  Any alleged harm Priester may endure is hypothetical until the PSAB adjudicates his grievance.

[15] By contrast, the PSAB reached a tie vote in a separate employee grievance filed by Kenneth E. Larrick.  In that action, however, the Board actually issued an order formalizing its 2-2 vote; whereas, in Priester's case, the Board only drafted an order that it decided not to issue, and instead, decided to set the case in for rehearing.

*Terrace*, 230 Md. App. 349, 356 (2016) (examining the distinction between a *de novo* appellate hearing and an appellate body conducting *de novo* review of the law while still giving deference to the factual findings below), *cert. granted*, ___ Md. ___ (No. 90, Sept. Term 2016). He maintains that because the PSAB issued its 2-2-vote decision in the Larrick grievance as a final order, the PSAB considers tie votes to equate to final decisions. Interestingly, Priester's argument highlights the controlling distinction between the Larrick grievance and the underlying case. In Larrick, the PSAB *did*, in fact, issue a final decision—something it did not do here. The Larrick grievance, therefore, is distinguishable from *Renaissance Centro* and the case *sub judice*, and more analogous to *Forks of the Patuxent*, in which the question of finality was not raised because the agency already formalized its tie vote in a final order. *See id.* (analyzing the legal effect when a Board "*issue[s]* an evenly divided decision" in a *de novo* appeal (emphasis added)). Here, as in *Renaissance Centro*, the issue is whether an administrative body must finalize that vote in the first place. Because the PSAB did not issue a final order, we need not resolve the parties' disagreement over the impact of a hypothetical decision finalizing the Board's 2-2 vote.

Priester's complaint before the circuit court concedes the lack of finality. Priester's entire legal argument—from his allegation that the Board violated its statutory mandate by not issuing a final decision, to his "clear and indisputable right" to have the Board issue that decision—admits that there was no final administrative order below. Rather than wait and file an action in the circuit court for judicial review of the agency's final decision, Priester filed writs of mandamus in which, among the other relief

19

requested, he asked the court to order the PSAB to *issue a final decision*. To the extent Priester argues the 2-2 vote constituted a final decision, he cannot have his proverbial cake and eat it, too.

If Priester wishes to challenge the legitimacy of the PSAB's procedures, he must wait until after the Board issues a final order, unless an exception to the exhaustion doctrine applies. *See* Committee Notes to Maryland Rule 7-40 (explaining that "[o]rdinarily, administrative finality is required" before a petitioner may file a writ of mandamus). We turn now to why no such exception applies in the circumstances presented in this case.

## 2. Exceptions to Exhaustion

The exhaustion doctrine fulfills the legislature's intent of delegating a matter to an agency for initial review and decision, promotes the policy of allowing agencies to exercise their expertise, and furthers judicial economy by limiting the number of appeals before the court, allowing the administrative process to narrow the scope of those issues that do eventually warrant judicial review. *Soley*, 277 Md. at 526; Rochvarg, *supra*, at 193. Priester's opening contention is that dismissing his appeal would not further the aims of the exhaustion doctrine because his administrative appeal is too far along in the administrative process. This argument does not correspond to any of the recognized exceptions to the exhaustion doctrine and is without merit.

In 1980, the Court of Appeals decided *Blumberg*, in which the Court compiled a list of five exceptions to the exhaustion doctrine derived from Maryland cases decided

20

over the previous 40 to 50 years.[16]  *Prince George's Cnty. v. Blumberg*, 288 Md. 275, 283-85 (1980).  Priester invokes by name the unauthorized procedure exception, and makes three additional arguments that fit within the balance of the *Blumberg* exceptions.

---

[16] The exceptions listed in *Blumberg* are as follows:

1.  When the legislative body has indicated an intention that exhaustion of administrative remedies was not a precondition to the institution of normal judicial action.  *White v. Prince George's Co.*, 282 Md. 641, 649, 387 A.2d 260, 265 (1978).

2.  When there is a direct attack, constitutional or otherwise, upon the power or authority (including whether it was validly enacted) of the legislative body to pass the legislation from which relief is sought, as contrasted with a constitutional or other type issue that goes to the application of a general statute to a particular situation.  *Harbor Island Marina v. Calvert Co.*, 286 Md. 303, 308, 407 A.2d 738, 741 (1979).

3.  When an agency requires a party to follow, in a manner and to a degree that is significant, an unauthorized procedure.  *Stark v. Board of Registration*, 179 Md. 276, 284-85, 19 A.2d 716, 720 (1941).

4.  Where the administrative agency cannot provide to any substantial degree a remedy.  *Poe v. Baltimore City*, 241 Md. 303, 308-09, 216 A.2d 707, 709 (1966).

5.  When the object of, as well as the issues presented by, a judicial proceeding only tangentially or incidentally concern matters which the administrative agency was legislatively created to solve, and do not, in any meaningful way, call for or involve applications of its expertise. *Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Area*, 282 Md. 588, 594-604, 386 A.2d 1216, 1222-27 (1978).

*Blumberg*, 288 Md. at 283-85.

Additionally, in *Maryland Nat. Capital Park & Planning Comm'n v. Crawford*, this Court found that a sixth exception exists for civil actions pursuant to 42 U.S.C. § 1983.  59 Md. App. 276, 290, 475 A.2d 494, 501 (1984), *aff'd sub nom.*, *Maryland-Nat'l Capital Park & Planning Comm'n v. Crawford*, 307 Md. 1, 511 A.2d 1079 (1986).

We recast these arguments systematically under the applicable legal framework as: 1) the PSAB failed to adopt written rules of procedure; 2) the PSAB lacks the statutory authority to rehear his grievance; 3) the PSAB violated his constitutional right to due process and fundamental fairness through its lack of written procedures, its ad hoc decision making, and George Gay's dual role as Director of Human Resources and Secretary to the Board; and 4) the PSAB will not provide him an adequate remedy.

Over the years since *Blumberg*, the Court's clarifications and interpretations have pared down each exception's scope and corresponding availability to litigants. Through these decisions, the Court of Appeals has displayed a strong preference for administrative exhaustion.

### a. The Unauthorized Procedure Exception – On Life Support

Priester claims he is not required to exhaust the exclusive administrative remedy afforded his grievance under the Baltimore County Code because the PSAB is requiring him to follow an unauthorized procedure—the rehearing of his grievance. But the unauthorized procedure exception acknowledged in *Blumberg* has very limited viability today. In fact, just three years after deciding *Blumberg*, the Court of Appeals practically jettisoned the exception in *Maryland Commission on Human Relations v. Bethlehem Steel*, 295 Md. 586, 595 (1983). There, the Court was presented with an issue that involved the interpretation of a Maryland Commission of Human Relations agency rule. *Id.* at 595. Specifically, Bethlehem Steel alleged that the Commission had violated its rules and exceeded its jurisdiction by granting an application for reconsideration in an employment discrimination matter more than 30 days after its initial finding. *Id.* at 589.

22

Bethlehem Steel filed suit in the circuit court challenging the Commission's action before the Commission heard and decided the case on reconsideration. *Id.* Bethlehem Steel maintained that it was not required to exhaust administrative remedies because the Commission required Bethlehem Steel to follow an unauthorized procedure and because the matter concerned the Commission's jurisdiction and was more appropriately determined by a court. *Id.* 594-95. The Court resolved the issue broadly by proclaiming that "in cases involving the interpretation of an agency rule, . . . statutorily prescribed administrative and judicial remedies ordinarily must be exhausted," and that ordinarily, none of the exceptions to the doctrine of exhaustion apply. *Id.*, 594, 596. The Court addressed Bethlehem Steel's unauthorized procedure argument in a footnote, stating:

> We note, . . . th[e] exception is dicta in *Blumberg*, and is supported by the citation of only one case, *Stark v. State Bd. of Registration*. Moreover, in *Soley v. State of Maryland Comm'n on Human Relations,* this Court expressly disavowed the dicta appearing in *Stark*, stating that it had been "deprived of any vitality it may have possessed by the subsequent adoption of the Administrative Procedure Act[.]"

*Id*. at 594, n.10 (internal citations omitted).

The Court of Appeals recently put another stake in the heart of the unauthorized procedure exception in *Hovnanian II*, 443 Md. at 219. In *Hovnanian II*, a developer applied for a wetlands license, an application process that "typically begins with a review by the Maryland Department of the Environment ("the Department" []), and terminates with the Board[of Public Works'] decision following receipt of a report and recommendation from the Department." *Id.* at 205. After six years of administrative and judicial challenges to the board's denial of Hovnanian's application, the developer

23

submitted to the board a revised application that incorporated the Department's recommendations. *Id.* at 206-09. Months later, the board disclosed to Hovnanian that the Wetlands Administrator, who had testified on behalf of the State, had a potential conflict of interest and the board would delay further proceedings until it could cure the record of any "ethical taint." *Id.* at 212. Hovnanian objected to the board's proposal and asked the board to schedule a vote on the application based on the existing administrative record. *Id.* at 213. When the board responded that it would not change its course, Hovnanian filed a complaint for declaratory and injunctive relief in the circuit court, seeking "to compel the board to review Hovnanian's revised application and to vote on the application based on the existing administrative record without further delay." *Id.* Hovnanian argued that under the unauthorized procedure exception, Hovnanian was not required to exhaust administrative remedies before filing its complaint in court. *Id.* The circuit court granted summary judgment in favor of Hovnanian, concluding that the board "acted beyond its authority by deferring its vote on Hovnanian's application, and that any further attempt by Hovnanian to advance its application would be 'an exercise in futility.'" *Id.* at 213-14.

Before the Court of Appeals, the board argued that Hovnanian's action was "premature and improper for two reasons: first, Hovnanian failed to await a final administrative decision, and, second, mandamus does not lie under these circumstances." *Id.* at 215. Hovnanian responded that although the Court had disavowed the unauthorized procedure exception in *Bethlehem Steel*, the progeny of cases cited by the Court all concerned proceedings under the APA, and that the "exception remains viable in agency

24

proceedings not governed by the APA." *Id.* at 219.

The Court of Appeals reversed, reasoning that whether a matter "is subject to the APA for judicial review is a distinction without a difference[,]" because non-APA cases are subject to essentially the same scope of judicial review "'in an action for mandamus, certiorari, injunction or declaratory judgment[.]'" *Id.* at 219-20 (quoting *Harvey v. Marshall*, 389 Md. 243, 296 (2005)). Accordingly, the Court "decline[d] to draw a distinction between APA vs. non-APA judicial review cases for the purposes of exceptions to the principles of exhaustion and finality." *Id.* at 220.

Priester asks this Court to apply the enfeebled "unauthorized procedure" exception in his case. He argues that the PSAB's 2-2 vote was a final decision and that the PSAB is requiring him to "follow the unauthorized procedure of a re-hearing without statutory authorization and contrary to past practice." As the Court of Appeals made clear in *Hovnanian II*, however, a board's "decision to hold a re-vote [i]s not a final administrative decision[,]" and an action for mandamus or declaratory relief will not lie until the petitioner exhausts its remedies and awaits a final administrative decision. *Id.* at 222. We conclude the Court of Appeals has disavowed the exception repeatedly, *id.* at 219, 222, and Priester cannot avail himself of it here.[17] Priester cannot evade the

---

[17] Priester is correct in pointing out that this Court referenced the unauthorized procedure exception in *Coreneos v. Montgomery Cnty.*, 161 Md. App. 411, 421, 428-29 (2005). In *Coreneos*, this Court permitted a litigant's declaratory judgment action to move forward when the agency with primary jurisdiction treated the petitioner's appeal as if it did not exist, concluding that the petitioner had no administrative remedy available. *Id.* As we will explain, however, when an agency refused to provide a remedy, the situation may fit better within the exception that applies when an agency
*Continued . . .*

requirement to exhaust his administrative remedies under the unauthorized procedure exception.

### b. The Jurisdictional Exception(s)

In 1989, the Court of Appeals explained that the "first and the fifth" exceptions listed in *Blumberg*—the two jurisdictional exceptions—"are essentially the same thing, namely where, as a matter of legislative intent, the agency's jurisdiction is not primary." *McCullough v. Wittner*, 314 Md. 602, 607 n.3 (1989).[18]

Short of an express statutory grant, "the relationship between [an] administrative remedy and a possible alternative judicial remedy will ordinarily fall into one of three categories." *Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 60 (1998). An administrative remedy may be: (1) "'*exclusive*, thus precluding any resort to an alternative remedy[;]'" (2) "'*primary* but not exclusive[,]'" in which case "'a claimant must invoke and exhaust the administrative remedy[;]'" or (3) "'fully *concurrent*, with neither remedy being primary,'" in which case "the plaintiff at his or her option may pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy." *Prince George's Cnty. v. Ray's Used Cars*, 398 Md. 632, 644-45 (2007) (quoting *Zappone*, 349 Md. at 60-61 (emphasis in *Ray's Used Cars*)); *see also Monarch Acad. Baltimore Campus, Inc., et al. v. Baltimore City Bd. of School Comm'rs*, ___ Md. App. ___, No.

---

"cannot provide a remedy." Accordingly, we will discuss Priester's contentions in relation to the *Coreneos* decision in subsection (d).

[18] Since *McCullough*, no Court of Appeals decision has interpreted or applied the fifth exception separately.

26

404, Sept. Term 2016, slip op. 13-14 (filed February 2, 2017) (citations omitted) (summarizing the three categories of relationship between administrative and judicial remedies, and explaining that "where the administrative remedy is deemed to be primary, it generally 'must be pursued and exhausted before a court exercises jurisdiction to decide the controversy'").

The jurisdictional exception only applies when an agency is engaged in an action "palpably" outside the scope of the class of claims it is authorized to decide. *Heery Int'l, Inc. v. Montgomery Cnty.*, 384 Md. 129, 138, 143-44 (2004). Therefore, in order to invoke the "palpably without jurisdiction" standard, a party must demonstrate that an agency is "operating indisputably beyond its authority, and distinctly outside its fundamental jurisdiction." *Id.* at 145. *See also Peter G. Angelos*, 364 Md. at 457-58 (holding that the State Board of Contract Appeals was "obvious[ly]" not "palpably without jurisdiction," because disputes involving procurement contracts were just the type of disputes the board was authorized to determine initially); *Montgomery Cnty. v. Ward*, 331 Md. 521, 629 (1993) (finding that a workers' compensation commission was not palpably without jurisdiction to reconsider its own denial of a prior motion to reconsider because the commission was tasked with deciding workers' compensation matters); *Bethlehem Steel*, 295 Md. at 595 (holding that, because the Maryland Commission on Human Relations "concededly ha[d] jurisdiction over cases of employment discrimination based on age, there [wa]s no jurisdictional question" implicated in the agency's interpretation of its own rules governing its authority to rehear appeals).

The standard was first recognized in Maryland in *MTA*, *supra*, 294 Md. at 449 (stating "[i]t may well be that exhaustion of administrative remedies is not required where an 'agency is palpably without jurisdiction[,]'" and citing Davis, *Administrative Law Treatise* (1958), Ch. 20, § 20.01, p. 56). In *MTA*, three women filed discrimination complaints with the Maryland Commission on Human Relations alleging they were denied employment by the MTA because they were overweight. *Id*. at 227. Following an investigation, the Commission's staff issued findings of probable cause to believe that the MTA had engaged in discrimination based on physical handicaps in violation of Art. 49B, § 16(a)(1). *Id.* MTA refused to concur with the findings and refused to execute proposed conciliation agreements. *Id.* Then, in advance of the public hearing that was to be held on the matter before a Commission hearing examiner, MTA filed a bill for declaratory and injunctive relief in the Circuit Court for Baltimore City. *Id*. at 228. The MTA asked the court to declare "that overweight or obesity is not a physical handicap within the meaning of the definition found in Article 49B" and "that the Commission has neither the power, authority nor jurisdiction to consider obesity as a physical handicap." *Id.* The Commission filed a demurrer (moved to dismiss), on the ground that the MTA failed to exhaust its statutory administrative remedies. *Id.* In a written opinion, the Court held that the MTA need not exhaust administrative remedies because "the issue here is purely one of statutory interpretation." *Id.* After the court granted summary judgment in MTA's favor, the Commission appealed and the Court of Appeals issued a writ of certiorari prior to oral argument in this Court. *Id*. at 229.

28

The Court of Appeals reversed on the ground that that MTA had failed to exhaust administrative remedies. The Court's reasoning is instructive:

> This Court has consistently held that statutorily prescribed administrative and judicial review remedies must be exhausted in cases involving the interpretation of statutory language. Moreover, to hold that the existence of a statutory interpretation issue furnishes an excuse to abort the administrative proceedings before a final agency decision, would also be inconsistent with the principle that the agency's construction of a statute which it administers is entitled to weight.
>
> The MTA in the present case has couched the statutory interpretation issue in terms of the Commission's "authority" or "power" or "jurisdiction," and has charged that the Commission is attempting to "expand" its jurisdiction and proceed in an unauthorized manner. Nevertheless, many, if not most, statutory interpretation issues arising in administrative proceedings could be phrased in terms of the agency's "authority," "power" or "jurisdiction" to take a certain type of action in a specific case. A party's argument that an agency will be exceeding its authority if it ultimately interprets the statute and decides the case contrary to that party's position, does not excuse the failure to await a final agency decision

*Id.* 232-233.

The Court of Appeals applied this standard in *Laurel Racing*, *supra*, 409 Md. at 463-64. In *Laurel Racing*, the Court considered whether the State Board of Contract Appeals had statutory jurisdiction over an appeal of the Video Lottery Facility Location Committee's denial of an applicant's bid for a video lottery license. *Id.* at 451-55. The statute governing video lottery licensing bids set out that the exclusive statutory remedy available to an unsuccessful bidder was to the State Board of Contract Appeals. *Id.* at 451. Yet after the Video Lottery Facility Location Committee rejected Laurel Racing's bid based on the company's failure to submit its initial licensing fee, Laurel Racing sought declaratory and injunctive relief in the circuit court. *Id.* at 454. The State filed a

29

motion to dismiss the action, arguing that the Board of Contract Appeals had exclusive or primary jurisdiction over an unsuccessful applicant's complaint, and that Laurel Racing had failed to exhaust its administrative remedies. *Id.* at 454-55. The circuit court rejected the State's argument, finding that the Board of Contract Appeals did not have jurisdiction over disputes that arose prior to the committee's award of a video lottery license. *Id.* at 455-56. The Court of Appeals granted certiorari and reversed, reasoning that "there [wa]s no issue . . . concerning the Board of Contract Appeals' subject-matter jurisdiction[,]" and that the statute governing video lottery licensing provided expressly "that the recourse of an unsuccessful applicant for a video lottery operation license is reviewed by the State Board of Contract Appeals." *Id.* at 463-64 (internal quotations omitted). The Court held that the board, therefore, had exclusive jurisdiction over the appeal and Laurel Racing must exhaust its administrative remedies before resorting to the courts. *Id.* at 464.

In one case, decided more recently, the Court of Appeals reached the opposite result and determined that the petitioners were not required to exhaust administrative remedies because the Maryland State Board of Contract Appeals was without jurisdiction over their claims. *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 515 (2014). In *State Center*, a group of property owners and taxpayers filed an action in circuit court seeking declaratory and injunctive relief against two state agencies and a development project, arguing that a series of development contracts between the defendants violated Maryland procurement law. *Id.* at 474. The defendants argued that the petitioners' claims fell within the exclusive jurisdiction of the State Board of Contract

30

Appeals and that petitioners failed to exhaust their administrative remedies before seeking judicial review. *Id.* at 508. The circuit court voided the development contracts and the defendants appealed. *Id.* at 474.

The Court of Appeals looked to the board's statutory authority and considered whether two issues excluded the petitioners' claims from the board's jurisdiction: whether the contract at issue was a procurement contract, and whether the petitioners qualified as bidders or offerors under the applicable procurement statute. *Id.* at 512-15. The Court concluded that the first issue was "reasonably debatable," and thus, the board was not palpably without jurisdiction to consider whether the contracts at issue were procurement contracts. *Id.* at 512. However, the Court determined that the petitioners "(as a group or individually) were ineligible to submit a response to the RFQ seeking to be selected as Master Developer[,]" because they did not qualify as "'a bidder or offeror, a prospective bidder or offeror, a unit or contractor.'" *Id.* at 515. The Court then concluded that the board was "palpably without jurisdiction" over their claims advanced in the litigation. *Id.*

Returning to the case at bar, we begin by noting that the Baltimore County Charter provides the PSAB with exclusive jurisdiction "[i]n the case of appeal." Baltimore County Charter, Article VIII, § 803. And Priester's grievance—one contesting the County's termination of his employment—is exactly the type of case the legislature chartered the PSAB to consider and decide. Baltimore County Code of Ordinances, Article III, Title 3, Subtitle 13, § 3-3-1305(a) (The PSAB shall: "Hear and decide appeals that are reviewable under Article 4 of the Code or the personnel rules that have been filed

31

by merit system status employees who have been dismissed for cause or subjected to other disciplinary actions[.]").

Priester maintains that the PSAB's governing statute does not provide the Board with authority to rehear a grievant's appeal. Priester does not contest that the PSAB has exclusive subject matter jurisdiction over the type of grievance he presents. *See Laurel Racing*, 409 Md. at 463-64 (holding that a petitioner must exhaust its administrative remedies when the legislature grants exclusive subject matter jurisdiction to an administrative agency). Instead, he insists that the PSAB's governing statute does not grant it authority to re-hear a grievance. The foregoing cases establish, however, that an agency's jurisdiction includes the authority to interpret its own rules governing its authority to rehear such appeals. *See Ward*, 331 Md. at 629; *Bethlehem Steel*, 295 Md. at 595. Accordingly, we reject Priester's contention that the PSAB is without jurisdiction to rehear his grievance.

### c. The Constitutional Exception

Continuing in its trend of narrowing the *Blumberg* exceptions, the Court of Appeals has "significantly limited the scope" of the constitutional exception. *See Montgomery Cnty. v. Broadcast Equities, Inc.*, 360 Md. 438, 455 (2000) (describing the exception as a "limited" one that courts must construe narrowly). The Court in *Broadcast Equities* and subsequently in *Ray's Used Cars*, declared that "'Maryland . . . administrative agencies are fully competent to resolve issues of constitutionality and the validity of statutes or ordinances in adjudicatory administrative proceedings which are subject to judicial review.'" *Ray's Used Cars*, 398 Md. at 650-51 (quoting *Broadcast*

*Equities*, 360 Md. at 451 n.8). In fact, it is error for an administrative agency to fail to consider a constitutional issue, once raised, if the resolution of that issue is necessary to the action's disposition. *Ray's Used Cars*, 398 Md. at 651-52. In both cases, the Court reviewed the numerous limitations to the constitutional exception.

For one, the constitutional exception does not apply when the legislature intended the administrative remedy to be exclusive and there is no relief available alternative to the statutorily prescribed administrative remedy and subsequent judicial review. *Ray's Used Cars*, 398 Md. at 653 (citing *Broadcast Equities*, 360 Md. at 456-57). Additionally, a facial constitutional challenge will not stand if it ultimately requires a factual exploration, such as "when statutory classifications are challenged on equal protection grounds or under Article 46 of the Maryland Declaration of Rights." *Broadcast Equities*, 360 Md. at 457 (citing *Ins. Comm'r v. Equitable Life Assurance Soc.*, 339 Md. 596, 623-24 (1995). The exception to exhaustion is further constrained by the doctrine of constitutional avoidance. Pursuant to the doctrine, the judiciary will not consider a facial challenge to an administrative agency's authority if the agency may possibly afford the petitioner relief on non-constitutional grounds without impacting the petitioner's constitutional rights, "thus making unnecessary a ruling on the constitutional issue." *Ray's Used Cars*, 398 Md. at 653 (citing *Broadcast Equities*, 360 Md. at 461). Similarly, the exception does not apply "when the judicial decision on the facial validity of an enactment is not likely to terminate the controversy." *Ray's Used Cars*, 398 Md. at 654 (citing *Broadcast Equities*, 360 Md. at 461-62); *but see Ehrlich v. Perez*, 394 Md. 691, 700, n.6 (2006) (holding that even though the plaintiffs had failed to take an administrative appeal, the

suit was permitted when "the 'constitutional exception' to the general rule applie[d]. . . where *the sole contention raised in the court action* is based on a facial attack on the constitutionality of the governmental action." (emphasis added) (internal citations omitted)).

Recently, the Court of Appeals applied these principles in *United Ins. Co. of Am. v. Maryland Ins. Admin., et al.*, and held that the petitioners had asserted an "as applied" constitutional challenge that did not meet the requisites of the constitutional exception to the exhaustion doctrine. 450 Md. 1, 36-37 (2016). The petitioners (various insurance companies) filed a declaratory judgment action in the circuit court against the Maryland Insurance Administration ("MIA") and the Insurance Commissioner contending, as grounds for relief, that the anticipated retroactive application of a new statute violated their substantive contract rights as well as various provisions of the Maryland Declaration of Rights, the Maryland Constitution, and the United States Constitution. *Id*. at 12. The petitioners claimed the constitutional exception permitted their court action without having to exhaust administrative remedies before the MIA because they advanced a "direct attack" on the General Assembly's power and authority to pass legislation that retroactively impaired their vested contract rights. *Id*. at 35. The Court of Appeals concluded, however, that the petitioners did not seek to have the entire statute declared unconstitutional, but rather, their protest "*focuse[d] only upon the constitutionality of a part of the statute (i.e.*, the retroactive enforcement []), and more importantly, *how the statute is applied to a particular situation.*" *Id.* at 38-39 (emphasis in original)(internal citations omitted). Thus, the Court held that the constitutional exception is unavailable

unless a petitioner attacks the validity of the statute as a whole, and not merely a portion of the statute or the statute's application in a particular circumstance. *Id.* at 39.

In sum, when an agency's jurisdiction is non-exclusive, a grievant may avoid exhaustion by asserting before the judiciary a facial constitutional challenge to the governing statute, so long as the challenge poses a pure question of law, the answer to which must be reached *and* must dispose of the entire controversy.

Although among his contentions on appeal, Priester asserts constitutional due process challenges—one concerning the George Gay's dual role as the County Director of Human Resources and Secretary of PSAB, and the other, the Board's lack of written procedures—he presents fact-specific, as-applied claims that do not qualify for the constitutional exception. Moreover, the constitutional exception is ordinarily not available in cases where the administrative agency is conferred exclusive jurisdiction over the appeal. *See Ray's Used Cars*, 398 Md. at 650-53. Accordingly, Priester's case does not qualify under the constitutional exception to the exhaustion doctrine because: 1) an appeal to PSAB was Priester's exclusive remedy from the ALJ's decision under the applicable provisions of the Baltimore County Code; 2) he does not challenge the PSAB enabling statute as a whole; 3) under the doctrine of constitutional avoidance, the agency may possibly afford Priester relief on non-constitutional grounds; and 4) his constitutional claims are not the "sole contention[s]" raised in the action. *Ehrlich*, 394 Md. at 700, n.6.

### d. The Inadequate Remedy Exception

Finally, as mentioned *supra* in note 17, in support of his argument that the

exhaustion doctrine does not apply, Priester relies on this Court's decision in *Coroneos*, which examined the exception that can be categorized more aptly as when an agency cannot or will not provide an adequate remedy. The rationale for the exception expressed in *Coroneos, supra*, 161 Md. App. at 421, 428-29, finds its origins in one of the first cases to apply the inadequate remedy exception, *Board of Commissioners of Anne Arundel County v. Buch*, 190 Md. 394, 396 (1948).

Mr. Buch, a taxpayer, had petitioned his county commissioners for a hearing, but they refused to grant him one, stating that he had no basis for a hearing. 190 Md. at 396. Following the commissioners' refusal to grant him a hearing, Buch petitioned the circuit court, asking the court to order the commissioners to grant him a hearing. *Id.* The county argued that Buch's only remedy was to appeal to the State Tax Commission—not to seek judicial review in the circuit court. *Id.* at 402. The circuit court granted Buch's writ of mandamus, and the commissioners appealed to the Court of Appeals. *Id.* at 396. The Court of Appeals affirmed, reasoning that the commissioners' refusal to grant the taxpayer a hearing caused there to be no decision over which the State Tax Commission could have jurisdiction; and, even if the Tax Commission assumed jurisdiction, it could not provide an adequate remedy to Mr. Bush, because the Tax Commission lacked the statutory authority to remand the case for a hearing before the county commissioners—which was the relief sought.[19] *Id.*

---

[19] The inadequate remedy exception has also been raised—with little success—to avoid exhaustion based on the type of relief an agency is statutorily empowered to grant. *See, e.g.*, *McCullough v. Wittner*, 314 Md. 602, 608 (1989) (clarifying that "an agency's
*Continued . . .*

Similarly, in *Coroneos*, the agency refused to recognize the petitioner's administrative remedy and would not grant the petitioner a hearing, leaving the petitioner without a remedy other than judicial intervention. 161 Md. App. at 428-29. There, a reptile owner petitioned the county Animal Matters Hearing Board, challenging the animal safety department's decision to confiscate some 1,500 animals—including venomous snakes and lizards. *Id.* at 416. The petitioner also requested that the board waive the cost of boarding the animals pending appeal (estimated by the board to be $45,390 per month). *Id.* at 416-17. The board acknowledged the petitioner's waiver request and sought his financial records to prove that the boarding fee would cause him financial hardship. *Id.* at 417. After the petitioner provided tax returns showing a gross annual income of around $47,000, the board denied his waiver request. *Id.* at 418. The petitioner attempted unsuccessfully to convince the board to reconsider its denial of his

---

lack of power to grant the particular type of relief sought does not necessarily mean that the agency lacks jurisdiction over a matter or that the administrative remedy need not be invoked and exhausted"); *Bits N Bytes Computer Supplies, Inc. v. Chesapeake & Potomac Tel. Co. of Maryland*, 97 Md. App. 557, 570 (1993), *overruled on other grounds by Bell Atl. of Maryland, Inc. v. Intercom Sys. Corp.*, 366 Md. 1 (2001) (finding that the unavailability of monetary damages does not mean that an administrative remedy is inadequate); *Magan v. Med. Mut. Liab. Ins. Soc. of Maryland*, 81 Md. App. 301, 310 (1989) (finding that the unavailability of some forms of damages does not render an administrative remedy inadequate, because the exhaustion exception requires more than "some hardship" or "not giv[ing] one everything he or she wants").

Recently, however, a union employee was not required to exhaust administrative remedies because his labor union's internal remedies were inadequate to provide a remedy for his defamation claim. *Algamated Transit Union v. Lovelace*, 441 Md. 560, 578 (2015). In *Lovelace,* the Court of Appeals applied the federal "*Clayton* inadequacy test[,]" exception to the exhaustion requirement for claims brought under § 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a) (2012). *Id.* at 576-77 (citing *Clayton v. Int'l Union*, 451 U.S. 679, 689 (1981)).

waiver, before he then petitioned the circuit court for declaratory and injunctive relief. *Id.* at 418-20. The circuit court granted the board's motion for summary judgment, finding that the petitioner waived his right to appeal when he failed to cover the cost of the animals' care (or post a bond, or arrange for alternative care as also allowed by the statute). *Id.* at 422. The petitioner appealed to this Court and we reversed.

We began by examining the statutory requirement that animal owners must cover the cost of care, post a bond, or arrange adequate alternative care, and determined that these obligations applied in matters involving appeals *from* the board's decisions, and not to appeals *to* the board from department decisions. *Id.* at 427. We concluded that the exhaustion doctrine was inapplicable where, as in *Buch*, the lack of a remedy created by the board's refusal to consider the appeal was outcome determinant. *Id.* at 428-29. We reasoned, that "[t]he policy of judicial restraint was not implicated[,]" because the reptile owner "attempted to pursue [his] administrative remedy, and resorted to the circuit court only after the agency did not take any action and *treated [his] case as if [he] had no administrative remedy available*." *Id.* at 428-29 (emphasis added).

We determine the holding in *Coroneos* is not applicable to this case. The PSAB has made clear to Priester its plans to schedule a hearing—albeit a rehearing—of his grievance. There is no indication in the record, nor does Priester allege, that the PSAB refused to provide him a hearing and "treated [his] case as if [he] had no administrative remedy available." *See Coroneos*, 161 Md. App. at 428-29. We hold that Priester cannot avoid the exhaustion doctrine because he has failed to demonstrate that no adequate remedy is available.

### 3.  Mandamus

The Court of Appeals' analysis in *Hovnanian II* is instructive in further understanding why mandamus will not lie in these circumstances.  Priester argues that mandamus is appropriate because the PSAB violated its statutory duty to issue "a final and binding decision" in his grievance "as soon as possible."

The petitioner in *Hovnanian II*, *supra*, also sought judicial review in a non-APA administrative appeal by filing a writ of traditional mandamus prior to receiving a final decision.  *See* 443 Md. at 223-24.  After holding that the exhaustion doctrine barred Hovnanian's claim, the Court went on to hold that mandamus was improper because an "adequate avenue" existed for Hovnanian to obtain judicial review after he returned to the Board of Contract Appeals and received a final administrative decision.  *Id.*  The Court explained that, "in order for mandamus to lie, there must be both no adequate remedy and an alleged illegal, arbitrary, or capricious action[,]" and "Hovnanian ha[d] an available remedy: await a final decision by the Board and then seek judicial review in the circuit court."[20]  *Id.*  In reaching this decision, the Court noted that "there was no significant period of unexplained delay, and there [wa]s no evidence that the Board was

---

[20] Similarly, administrative mandamus is unavailable to Priester.  In *Barson v. Maryland Board of Physicians*, this Court explained that even when an agency's action "'prejudices a substantial right of the plaintiff[,]' in order for a writ of administrative mandamus to lie, the agency action *must* take the form of a 'finding, conclusion, or decision of the agency" that errs in one of the listed manners [under Maryland Rule 7-403]." 211 Md. App. 602, 618 (2013) (emphasis added).  As we discussed throughout this opinion, the PSAB has not yet issued a final administrative decision of which Priester can seek judicial review.

39

'deliberately dragging its feet' which might require judicial intervention." *Id.* (quoting *Harvey*, *supra*, 389 Md. at 276).

The same is true here. Priester has neither suggested nor demonstrated that the PSAB has deliberately delayed his rehearing or that the delay prior to his mandamus action was unduly long. Once the Board rehears his grievance and issues its final decision, Priester will still retain the adequate remedy of judicial review at that time. Consequently, mandamus is inappropriate under the current circumstances. *See Hovnanian II*, 443 Md. at 224; *Barson v. Maryland Bd. of Physicians*, 211 Md. App. 602, 618 (2013).

## CONCLUSION

In conclusion, it is clear that Priester's grievance—a challenge to a county employment termination—is within the PSAB's core competency and not indisputably outside the scope of the Board's statutory authority. Indeed, the PSAB has exclusive jurisdiction to hear and consider the employment grievances of County employees. Baltimore County Charter, Article VIII, § 803. The PSAB may interpret its statutory authority to permit the rehearing of those grievances. Our jurisprudence consigns to the agency the initial interpretation of its own rules and governing statute. *Bethlehem Steel*, *supra*, 295 Md. at 594. Even if the agency's action is *ultra vires* or illegal, the Court of Appeals has made clear that a petitioner must exhaust administrative remedies. *Soley*, 277 Md. at 528. So long as the Board intends to provide Priester with a remedy— meaning a *de novo* review of the County's decision to terminate his employment—he must exhaust that remedy before complaining to the judiciary about the PSAB's

procedural steps and interlocutory decisions.  Thus, with no exceptions available, the exhaustion doctrine requires Priester to await a *final* decision from the PSAB, and bars him from obtaining judicial review in the meantime.

We hold that because the Board has not yet issued a final order and plans to rehear the appeal, Priester has not exhausted his administrative remedies, and received a final administrative decision.  His action, therefore, was not properly before the circuit court and the court should have dismissed his petition without considering the merits.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED.  CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE ACTION.  APPELLANT TO PAY THE COSTS.**